IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

**JASON P BRAND**

-against-

PETERSON INTERNATIONAL UNDERWRITERS INC
("PIU"), DISABILITY MANAGEMENT SERVICES
("DMS"), CERTAIN UNDERWRITERS AT LLOYDS OF
LONDON THAT HAVE SUBSCIBED TO CERTIFICATE
NUMBER 1254480

---

**Amended Complaint and Request For Injunction**

Case No. 2:15CV-0637-JMA GRB

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 16 2016 ★

LONG ISLAND OFFICE

RECEIVED
JUN 17 2016
EDNY PRO SE OFFICE 

**The Parties to This Complaint**

**A.**     **The Plaintiff(s)**

**JASON P BRAND**
**18 PHAETONS DRIVE**
**MELVILLE, NY 11747**

**B.**     **The Defendant(s)**

**PETERSN INTERNATIONAL UNDERWRITERS (PIU")**
**23929 VALENCIA BLVD**
**VALENCIA, CA 91365**

**DISABILITY MANAGEMENT SERVICES, INC. ("DMS")**
**1350 MAIN STREET**
**SPRINGFIELD, MA 01103-1641**

**CERTAIN UNDERWRITERS AT LLOYDS**
**C/O PETERSON INTERNATIONAL UNDERWRITERS, COVER HOLDER**
**23929 VALENCIA BLVD**
**VALENCIA, CA 91365**

**II.**     **Basis for Jurisdiction**

Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case

This case is against the real parties that entered into a contract with the "plaintiff" for a disability policy, effective March 1, 2012,

The *"individual names" or investors* of this policy do not have any authority and they are bound by the decisions of the appointed Cover holder and Underwriter "Peterson International Underwriters, as well as the subcontracted Claims Service "Disability Management Services."

The ***real parties*** in which this action is brought are against completely diverse parties.

The syndicates that make up the Certificate of Insurance are based outside of the State of NY. The names within the syndicates are "anonymous" and **"names" that may have a New York Citizenship may be dismissed** as such individuals are not relevant parties to my insurance contract.

The syndicates then rely upon the actions of the lead "syndicate" ARK which is incorporated outside the State of New York, and this "lead syndicate" has appointed Peterson International Underwriters and Disability Management Services to act on their behalf in all respects to this policy in which this action is brought.

The jurisdiction for an action in federal court that **claims diversity can be determined by applying the policy's lead underwriter**. The Policy in which has breached the contract is provided and underwritten by "Peterson International Underwriters. Peterson International Underwriters is a California based Underwriter and Cover Holder that has a close business partnership with various Syndicates within the Lloyds Market that contracts with such Syndicates allowing Peterson to have "The power of the pen" to bind products that fall within their underwriting guidelines."

Peterson is being sued as the **"representative capacity"** there is no cause of action against any individual's and their capacity as "names." (Underwriters at Lloyds, London v. Osting-Schwinn, 613 F.3d 1079, ;1092 (11 Cir 2010).

There are no legal grounds in which the "names" would be able to bring any action against the plaintiff, or visa-versa, as these names rely upon the actions of the syndicates in which they subscribe, and the "names" have no decision making authority in regards to the binding and and/or claims process, the ruling of this court per the insurance contract shall govern the insurance contract at hand in which this court per the policy has jurisdiction to this litigation.

This action brings multiple causes for relief as well that allow this forum selection to be proper. The "DJ" action in which is regarding a breach of contract claim that can be determined on its face and the undisputable facts that support such pleading,

However, the plaintiff also brings necessary independent coercive claims which are independent of any "declaratory relief" in which itself pride an independent basis for federal diversity jurisdiction.

Lastly, this action and the action in Principal V. Brand and its counterclaim against Principal Life Insurance Company in which this action should theoretically be positioned, as both Insurers Principal Life Insurance Company and Peterson International Underwriters have acted to rescind the LTD policies in which were bound in conjunction with one another.

It's reasonable that a "prudent person" to assume given the reasoning in which they both have attempted to rescind the coverage rely upon the same allegations as support to their decision. The plaintiff has alleged that both policies were bound together, and that both policies relied upon the same representations made during the application process. Both policies have also not paid benefits to date although no court has ruled to void either contract of insurance.

The choice of forum was chosen to not hamper the efforts of the court system, yet to take two cases that can be easily combined with the same discovery at least from the policyholders stand point and not duplicate the efforts by multiple courts.

I also believe we have a situation that is unique in this case that is not your everyday "Declaratory Judgement" action. In which we are dealing with the constitutional rights of a policyholder and the rights and responsibilities of an insurance company under public policy.

The plaintiff is attempting to show the court that we do not have a simple coverage litigation. We have a situation in which the insurance companies have taken the law into their own hands and have deprived their policyholder of their rights in which the insurer made a determination in their own favor in regards to the enforceability of an insurance contract.

It's clear that New York governs this contract, however there are no "real parties" to this

action in which is located in the State of New York and or/a resident of New York. The only party that has claims within New York is the Plaintiff, Jason Brand, a resident of Suffolk County.

Peterson International is a California domiciled company, Peterson International is the party that has been contracted by the "Lloyd Underwriters" to underwrite a policy, promote the policy, assign brokers to sell the policy in the various states in which this policy is licensed to be sold. Peterson International created the underwriting manual that includes the Claims manual, as "we assume" that all claims are adjusted by the same standards, and such claims are adjusted in compliance with NYS law. (which isn't the case in this action.

## III.    Statement of Claim

A policy was written by Peterson International Underwriters, Inc. for Long Term Disability Insurance in the beginning of 2012. This policy was written in conjunction with another policy from Principal Life Insurance Company to provide the most "benefit to income" ratio at the time the policy was written if the plaintiff were ever to became disabled.

The broker that marketed this insurance, Illan D. Glenn, at Rampart America asked the plaintiff to write an email with various background medical, income, and social information. In which Ill attach to this complaint. This information was send to various insurance companies in which multiple companies came back with a preliminary offering or LTD coverage, and what conditions they needed completed to give an actual proposal.

Some of the represented medical/Mental Health/ & Medication information needed clarification was requested through email from the underwriters to the broker, in which I had responded to the best of my knowledge at the time.

The broker and the underwriter arranged to have an independent Medical Exam done at my home or business, and various lab work completed. The various underwriters, and insurers also had the plaintiff sign HIPAA medical release forms and my medical information was requested from various providers to the underwriters, and my personal information was also collected from consumer reporting agencies (such as MIB, and Millman).

After all the above information was collected and marketed to the insurers through the broker, three of the seven insurers/underwriters expressed an interest in writing a policy. Principal Life Insurance Company, Exceptional Risk, and Peterson International Underwriters.

The plaintiff was looking to maximize his benefits to bring his replaced income benefits as close to his current income in which the insurers conducted a review of the prior 3 years of income tax returns (both personal and business) in which the broker and underwriter averaged an $500,000 a year worth of income on average using the previous 3 years of reported income.

The broker was really pushing for the Principal Life Policy, the maximum policy amount they would write was $18,250 a month, yet there were a ton on extra benefits, and as the broker stated, it was the "gold standard." It wasn't cheap either, but he assumed me the product was excellent and provided myself various advertisements to support such. When I stated I would take the Principal Life policy, yet I needed more coverage. The broker sent an email stating that I needed to fill out "The application" and I needed to bind the Principal Policy prior to binding another policy for the additional replacement income. (email provided on docket as backup to facts)

When asked about what he need on this this application that wasn't already provided during the underwriting, the broker basically walked me through the application and I signed it while I was with him, and I never really thought about it at that time, given I was following the insurance agent's directions.

Also because the policy was already underwritten and quoted based upon the various information they have gathered o0ver the last month to include the various answers that came up when

reviewing my medical and financial history from the requested providers and/or consumer reporting agencies. It wasn't a fast process and it really required a lot of information to go through as the companies took the various information and provided proposals.

Principal life Insurance application was then signed and I 1provided a check to the broker to bind the insurance.

Public policy has established the power of the court system in intervene when there is a conflict over a contract and whether such contract is enforceable. NYS specifically has established certain unique restrictions in regards to Life, Health, and Disability Policies and when an insurer can cancel or rescind such a policy.

Whatever representations that were made during the application process were made in the same matter to all insurers, as everything was provided to the broker or agent of Peterson International and the same agent of Principal Life Insurance Company.

This is how these insurers conduct their business and how these policies are attained. Everything from the application process, payment of premium, questions about your insurance contact, to the claims initiation process all flows through these agents.

These "agents" are appointed to the insurance companies and underwriter's that have a duty of care to these insurers and underwriters, and are paid a commission by these insurance companies/underwriters in return for the business in which the agents bring to these companies. Agents represent multiple insurers, and have the knowledge and I will assume "the duty of care" when deciding and marketing insurance to their clients that best fit their needs and as well making sure the insurance companies are represented properly and the risks are undertaken by the proper insurer in which they are "appointed."

Peterson International Underwriters is written all over the policy. Peterson International is the company that advertises this product in which I have purchased. Peterson International is one of two Lloyds Underwriters that had provided a proposal for Long Term Disability Income Insurance to the Plaintiff at the time of his application. There were no "syndicates" therefore no "names" were assigned when the electronic application

was sent via email to the plaintiff, there wasn't even a Contract or Certificate number at that time. The application that the defendant alleges was the only piece of paper or the only application that the defendant relied upon when issuing the policy was NOT part of the electronic contract that the Plaintiff signed when accepting to bind the policy.

The plaintiff agrees and believes when any individual signs a contract in good faith, that ALL INFORMATION that was provided during the application process is true to the best of their knowledge. This includes all the medical records that the underwriter and/or the broker got from the insureds medical providers, the Consumer reports that the underwriters used to "rate and underwrite the risk" and anything and everything else.

When an insurer specifically excludes coverage on a policy such as an "lumbar spine exclusion" the insurer has accepted and acknowledged the good faith of an insured that they disclosed a surgery. The insurance company was provided medical information of the insureds back issues, and this is how the exclusion was created in good faith.

The same good faith is expected to be reciprocal in that the true statements that are made during the application process and in which the insurance company has accepted the "risk" and continues to accept premium payments, that they acknowledge their obligation if the risk is triggered!

This is precisely the issue that this court needs to understand. The State of New York has attempted to prevent insurance companies from unjustly cancelling and rescinding policies of this nature. It makes perfect sense, if a claim happens over 2 years from the issuance date, it's a pretty safe bet that the person was not disabled at the time of filling out the application and was telling the truth to the best of his ability!

The insurance companies are essentially regulating themselves, here we are now 18 months after a claim should have been triggered and the insurer is not paying the claim because they allege an insured acted negligently almost 3 years prior to the claim.

How does an insurance company determine someone's state of mind 3 years prior? Who has given the insurer the unlimited power to accept the premium of insurance in which a

consumer has paid ("we allege" in good faith) and decide when they are going to trigger the coverage in which the insured paid for?

If the law holds true for everyone, to include the insurance companies, the actions to date by the insurers need to be punished. The insurance company's need to be sanctioned, because they have unjustly withheld the rights of the most venerable people that have (we must assume "that have purchased the insurance in good faith over 2 years ago")

Yet, the point is that the contract is bilateral, and both parties have obligations under such a contract. The insurance company as a matter of public policy is supposed to provide "a promise" while the court and the officers of the court are tasked with the enforcement of the law against violators. An insurance company has no more rights than the policyholder, and is not entitled to take the law into their own hands under any circumstances!

There were various representations in which I acknowledged, as such information became part of the contract of insurance. For instance, I acknowledged that I had prior Lumbar Back Surgery, and the Principal Life Insurance Policy contained an "Exclusion Endorsement" that excluded any complications from my Lumbar Spine. I acknowledged I was on medication for Nerve Pain, also Blood Pressure and Cholesterol, etc.  Everything was controlled, and at the time I filled out the application (which includes the information that was put on the email, and everything that was provided to the broker in which my policy was underwritten based upon, including the medical records obtained, and all consumer reports that the insurer stated they relied upon) all information.

After the Principal Life insurance policy was bound the broker and his staff at "Rampart" were working with both "Exceptional Risk" and "Peterson International" both Excess Insurers in the Lloyd's Market. Exceptional Risk wasn't really willing to give too much coverage. They were only offering around $5,200 income a month with a "full spine" exclusion.

Peterson International Underwriters was willing to write a policy with the "same wording and exclusions" as the Principal Life Insurance Policy and offer a benefit of $10,800 a month with some of the other excess benefits included in the Principal Life Insurance policy.

The plaintiff decided to bind the Peterson International Underwriter policy, keeping in mind the same information (medical, mental health, exam, blood work) was used to market and bind this policy as well and these two policies were worded and bound in conjunction with one another for the purpose of meeting an income requirement I needed and making sure the coverage were designed to complement one another.

This was bound with an effective date of March 1, 2012 and the principal Life policy was amended by the broker to reference that the "PIU" policy was bound to provide the additional benefits.

I had back issues over the years, when I got the LTD insurance policies from both "PIU" and "Principal Life" I provided information on my prior lower back surgery, and was I okay, taking nerve medication as stated also in the initial email that the broker used to get an indication of which insurers would interested in writing a policy for the plaintiff. I believe at the time I was taking either "Cymbalta" and/or "Nortriptyline(Generic) Neurontin (Brand Name)". There were no pinched nerves, and nothing that prevented myself from working or functioning everyday as I normally did.

In the following summer of 2012, (after the insurance was bound) I was rear ended in a car accident on my way to work and needed a Thoracic Spine Disc Fusion, due to a fracture. I didn't take disability then and returned to work when I recovered from surgery.

Around the summer of 2014, I started to get extreme numbness in my right hand and side, I really wasn't sure what It was and I continued to work. I started to get headaches, and eventually over time I started dropping things due to numbness.

The neurologist said I had a compressed nerve in my neck, and I should try physical therapy, and some injections, without much success.

The fact is that I couldn't continue to do the commute into the city, and my range of motion just wasn't good. I also kept dropping things, and getting this really bad feeling of "pins and needles."

As a last` result, surgery was scheduled for me, by a neurosurgeon. I could not work.

The surgery happened the 2nd week in January 2015, a week prior I saw an Orthopedic Surgeon, and he didn't think my numbness was related to my pinched nerve in my neck and he said I have arthritis in my shoulder (right). He gave me an injection for it that day to cope with the pain.

The neck surgery came with a ton on complications in which I was back in the hospital 2 days after being released due to a "blocked Larynx" and breathing problems. The surgery did absolutely nothing for my numbness and my pain, actually it was getting worse, and my neck wasn't healing evenly and need to go to Physical Therapy, but that made my pain get worse, and I had to stop.

In march 2015, I had to get shoulder surgery for arthritis, (shaved my shoulder), that that very painful, and guess what? It helped with the arthritis, but the numbness, and pins and needles continues.!

A few months later, I went to a new neurologist, and after multiple tests I'm diagnosed with severe Carpel tunnel syndrome.


**IV. Other Relevant Facts –**


In the first 9 months since the claim was made:

the insurer did not provide coverage after 90 days per the policy.

Did not adjust the claim in a reasonable and ordinary matter.

Seeked to settle the claim for less money than they were contractually liable for (refund of premium in exchange for rescission when $64,800 was due to date.)

Has not brought suit to enforce a rescission per NYS law.

Made up a lot of allegations in their letter for denying my benefits that are actually contradicted in the email exchanges with the claims representative.

Contacted other insurers, and exchanged health related information after the Plaintiff specifically told the claims company they did not have the authorization to do so.

"DMS" violated HIPAA laws and accessed records that were not property of the defendants, given they were the claims provider for Cigna as well.

The defendants both acted in a matter in which violated public policy and have unjustly enriched themselves due to an apparent conflict of interest.

There is no harm allegedly to the insurer, as they have collected the premium all these years, and took on the "risk" of a loss, and the insured paid this premium all these years with the intent of protecting his family. It is not unreasonable for a loss to be paid, and or benefits to be paid prior to final adjudication.

Benefits and the loss have been withheld without even an attempt to legally enforce the rescission, and the insurer has lost their right to rescind per their own contract. *"No legal action shall be taken more than one year of the date of claim."*

No one should be deprived of their rights, and no one has the right to void a valid contract except for the court in which has jurisdiction over such contract.

What happened to my rights to the contract? How does an insurance company continue to collect premium, violate the law by not adjusting the claim in a fair matter, and just "state they decided to rescind the policy?"

Maybe I'm missing something here? Are we going by the contract of insurance that is supposed to be in compliance of NYS law? How about any state of the US, when has an insurer been grandfathered to have the same enforcement powers of the court?

When researching the law of rescission of a policy in NYS in which the 2-year contestability period has lapsed, the insurer must file an action with the court to enforce a rescission. (Ghose v. Can Reinsurance Co., Ltd. 43 AD 3d 656 (NY App Division 2007)

Regardless of what else is going on in my life, the facts are the facts! I am pleading a suit here for the violation of a contract in which the defendant and I had b-laterally. Both parties under the contract agreed to perform in their capacity before any action has been alleged in this forum, both parties in this contract can equally admit that:

There was a contract of insurance for LTD benefits plaintiff and defendant effective March 1, 2012 for $10,800 per month for 5 years and after 63 months of continuous disability a Lump Sum of an additional $1,000,000.

There was a 90-day elimination period in which has been satisfied in which benefits would not be paid, or Jan. 21, 2014 as the starting date if the claim was triggered due to a valid disability sustained by the Plaintiff.

After the 90 days, Premium would be waived while the Insured was disabled and collecting benefits.

In NYS, the insurance law states - an insurer cannot deny and/or rescind a policy based upon an insureds misstatement alone; such policy or certificate may be contested only **upon the showing** that the insured knowingly and intentionally misrepresented relevant facts relating that the insureds' health that would be material in placing the risk in which the insurer would not have insured such risk if they had been presented that such health conditions existed during the underwriting process.

## V.    Irreparable Injury - Ongoing

None of my disability insurance has been paid per the contract after the 90-day elimination period.

I can't pay for health insurance anymore, I have Medicaid, and I do not have any doctors that take it.

My medical conditions continue to worsen and a lot of the damage that has happened to my body is due to the lack of the ability to access needed medical care.

I have responsibilities to creditors, and my family, the court has not ruled either granting the rescission or denying such.

It will be very difficult to measure what amount of money that will be able to compensate the amount of damage that has been caused over the last 18 months in which this policy should have triggered per the contract.

The damages are compounded by causing irreparable events in which cannot even be compensated, such as permanent medical conditions that are simply do not disappear.

However, there are imminent needs today that need to be addressed immediately such as housing, utilities, medical bills, life insurance payments (whatever has not lapsed yet), auto insurance, home insurance.

These are all past due, and there is no other way of paying these expenses except for the being paid the benefits in which this policy and the other policy from Principal Life Insurance was purchased to protect.

There are my children that have been unjustly affected by the lack of funds, in which such insurance was purchased with them as the primary motivating factor.

There are many third parties that have been promised that the debt in which was incurred

was going to be paid when my benefits of this insurance was going to kick in after the 90-day elimination period.

The actions to date by the defendants in this matter and the plaintiffs in the Principal Life Insurance matter has a massive effect of the lives and wellbeing of many victims, in which their clearly do not have the authority to deprive another of their protections of the law.

The court must intervene as a matter of creating order, and issue an injunction and most favorably a declaratory judgement based upon the facts of the case and how the law is written.

There is a depravation of the insured's rights and those of his family, when there is a clear showing that the plaintiff "relied" upon the benefits of the insurance contract to support themselves when the "unthinkable transpired."

The insurer does not have the right to deprive a family of a benefit in which they depended upon in which there is a requirement under the law that the insurer and the insured are to be treated "equally."

## VI.    Relief

The insured paid the premium without incident for over 3 years, even after the premium was allegedly waived after the 3 month "elimination period" in good faith as the insurance contract was valid, and enforceable per NYS law. Today, and for the last 18 months the insurer has unilaterally rescinded the policy without the consent of the court! The victim of the breached contract, the Plaintiff is bringing this action for an immediate Injunction, and a Declaratory Judgement to enforce the contract with the ability to seek damages for the breach, and ongoing bad faith.

We have multiple breaches, that have occurred essentially since the binding of the policy, the insurer has accepted premium and continues to retain such premium without any performance under the contract.

The insurance benefit needs to be paid per the contract until the court rules, yet it's been 18 months since the insurance should have been triggered per the policy. The insurer denied the claim and continued to accept premium in violation of the contract after the 3-month elimination period.

The first letter denying the claim and seeking to rescind coverage was June 29, 2015, this is 6 months or after $64,800 was due to the plaintiff in disability income which is actually 9 months since the date of the claim to include the 3-month elimination period.

The plaintiff seeks a Declaratory Judgement in the amount of the Policy with in $10,800 X 60 Months = $648,000 = $1,000,000 lump sum = 1,648,000. Plus – Interest, fees, consequential damages, and legal fees to repair of credit in conjunction of settling defaults, costs to stop foreclosure and restore mortgages and bring current. In addition, I am requesting punitive damages to be paid to compensate the insured, his family and third parties that have been unjustly harmed by the multiple and ongoing torts of bad faith of the defendant, to equal an amount determined to be fair and reasonable by the court and/or determined by a jury at trial.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    Pro se:

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: June 15, 2016

Signature of Plaintiff    _____

Printed Name of Plaintiff    Jason P. Brand

### B.

| | |
|---|---|
| Address | 18 PHAETONS DRIVE |
| Telephone Number | MELVILE, NEW YORK 11747 |
| E-mail Address | JASONB8293@ME.COM |

CC. Opposing Counsel via email

1521138 (D.N.J. May 22, 2007); *see also Murphy v. Studio 6*, No. 09-2212-STA, 2010 WL 503126, at *8 (W.D. Tenn. Feb. 5, 2010) ("Service of process [is] not a prerequisite to a defendant exercising its right of removal under 28 U.S.C. § 1446.").

If the federal court concludes *sua sponte* or upon motion of a plaintiff that any of the requirements for proper removal have not been met, the matter may be remanded to the state court where it was initially filed.

### 2.    LLC's and Lloyd's Parties

The Third Circuit recently addressed removal and proof of diversity jurisdiction where the defendant is an unincorporated association such as a partnership or limited liability company ("LLC") in *Lincoln Benefit Life Co. v. AEI Life LLC*, 800 F.3d 99 (3d Cir. 2015). After the insurer filed a declaratory judgment action in federal court seeking a determination that the insurance policies were improperly procured, the trial court had granted the LLC defendants' motion to dismiss, concluding that the insurer failed to adequately plead complete diversity. The trial court had required the insurer to show the citizenship of each member of each defendant LLC in order to plead complete diversity. The Third Circuit reversed and reinstated the action, holding that the party asserting diversity jurisdiction must conduct a reasonable factual inquiry before alleging that none of an unincorporated association's members are citizens of a particular state. At that point, the burden shifts to the unincorporated association party make a factual challenge by identifying any member who "destroys diversity." The allocation of the burden to establish diversity in this way makes sense because, as the Third Circuit recognized, "[t]he membership of an LLC is often not a matter of public record." *Id* at 108. The insurer in the case pointed out that it had not been able to discern the identity or citizenship of the LLC members, despite a search of public databases, civil dockets and business-related search engines.

*Lincoln Benefit* provides a better-reasoned approach to determination of diversity given the unequal knowledge the parties about the unincorporated association's members at the time of filing or removal. This approach should also aptly apply to cases involving Lloyd's of London parties. The determination of a Lloyd's of London party's citizenship usually requires a determination of the citizenship of each to the Names subscribing to a policy, although some courts hold that a Lloyd's syndicate is a citizen of the state in which only its lead underwriter is a citizen. *See, e.g., Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1092 (11th Cir. 2010) (where Lloyd's is suing in a representative capacity, rather than a specific name suing as an individual, each name must be diverse for diversity jurisdiction to be invoked); *E.R. Squibb & Sons, Inc. v. Acc. & Cas. Ins. Co.*, 130 F.3d 925 (2d Cir. 1998) (holding that where the lead underwriter is sued in its individual capacity, the citizenship of the other subscribing underwriters is not relevant). The information about the Names, like the members of an unincorporated association, likely is difficult to discern from publicly available materials. Query whether a "reasonable factual inquiry" as to the citizenship of the relevant Names or syndicates should suffice for at least threshold pleading of diversity by a non-Lloyd's party.

### 3.    Improper Joinder

An effective counter to the policyholder's motion to remand is to argue that the non-diverse defendant was improperly joined in the state court proceeding. This maneuver enlists the federal

- 10 -

to amend its complaint and requested the inclusion of Severstal and the subrogated property insurers, including the Lloyd's of London underwriting syndicates, as defendants pursuant to Fed. R. Civ. Pro. 19(a).  (Doc. 24 at 4).  The Court granted this unopposed motion.  (Doc. 35).  After Hartford filed its amended complaint, Defendant Certain Underwriters filed the instant motion to dismiss pursuant to Rule 12(b)(1), claiming that the Court lacks subject matter jurisdiction because certain Lloyd's syndicates have the same citizenship as that of Hartford.  (Doc. 52).

On September 17, 2010, the Court heard oral argument on the instant motion.  For the reasons stated on the record at the hearing, the Court found that diversity jurisdiction does not exist with Defendant Lloyd's Syndicates 0510, 2791, 33, 0609, and 780 included as defendants. The Court found that those syndicates were citizens of Connecticut, which is the same citizenship as Plaintiff Hartford.  The Court request supplemental briefing on whether the nondiverse syndicates should or could be dismissed in order to retain subject matter jurisdiction.

## III.  STANDARD OF REVIEW

### A.  12(b)(1) Motion to Dismiss

"Subject matter jurisdiction is always a threshold determination."  American Telecom Co., L.L.C. v. Republic of Lebanon, 501 F.3d 534, 538 (6th Cir. 2007) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)).  The Supreme Court has explained, "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute ... [thus] [i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party

4

asserting jurisdiction." <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377,

(1994) (internal citation omitted).

Diversity jurisdiction exists when the claims in the complaint are between citizens

of different states and when the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs. <u>28 U.S.C. § 1322(a)</u>.  It is well established that

when federal jurisdiction is based on diversity of citizenship, complete diversity must exist

between the adverse parties in the action. That is, the citizenship of each plaintiff must be

diverse from that of each defendant. <u>See</u>, <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S.

365, 373-74 (1978); <u>Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 U.S. 826, 829 (1989).

Unincorporated associations are treated as citizens of every state in which at least one of

their members is a citizen.  <u>Carden v. Arkoma Associates</u>, 494 U.S. 185, 195-96 (1990).

**B.      Fed. R. Civ. Pro. 21**

Federal Rule of Civil Procedure 21 states:

> Misjoinder of parties is not a ground for dismissing an action. On motion or
> on its own, the court may at any time, on just terms, add or drop a party. The
> court may also sever any claim against a party.

<u>Fed.R.Civ.P.</u> 21.  Rule 21 permits a district court to retain diversity jurisdiction over a case

by dismissing a misjoinded nondiverse party provided that party is dispensable under Rule

19.  <u>Soberay Mach. and Equip. Co. v. MRF Ltd., Inc.</u>, 181 F.3d 759, 763 (6th Cir.1999)

(quoting <u>Safeco Ins. Co. v. City of White House, Tenn.</u>, 36 F.3d 540, 545 (6th Cir.1994)).

"It is well settled that Rule 21 invests district courts with authority to allow a dispensable

nondiverse party to be dropped at any time, even after judgment has been rendered." <u>Id</u>.

Therefore, "it is appropriate to drop a nondiverse and dispensable party from litigation in

order to achieve diversity." <u>Id</u>.

### C.    Fed. R. Civ. Pro 19

Rule 19 lays out a three-step test for determining whether a person or entity is dispensable in a civil action. Glancy v. Taubman Centers, Inc., 373 F.3d 656, 666 (6th. Cir. 2004). First, a court must determine whether the party is required under Rule 19(a). See, Fed.R.Civ.P. 19(a)(1). Second, if the party is "required," a "court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction." Glancy, 373 at 666. Third, if a court finds that a party is "required," but whose joinder deprives the court of jurisdiction, it must decide whether the court should, "in equity and good conscience," proceed by dismissing that party or dismiss the entire case because the party is indispensable. Id.; Fed.R.Civ.P. 19(b). Courts are to consider at least the four factors enumerated in Rule 19(b) in assessing whether the action should be dismissed or proceed forward despite the absentee party.  Id. at 672. These four factors include:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person ...; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; [and] fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Id. (quoting Fed.R.Civ.P. 19(b)).  Therefore, a party "is only indispensable, within the meaning of Rule 19, if (1) it is necessary, (2) its joinder cannot be effected, and (3) the court determines that it will dismiss the pending case rather than proceed in the case without the absentee." Id. at 666 (citing 4 MOORE'S FEDERAL PRACTICE § 19.02[3][c], at 19-22).

6

## IV.    ANALYSIS

### A.    Rule 19

Defendant Certain Underwriters argues that since five Lloyd's syndicates are nondiverse, the Court is without subject matter jurisdiction and must dismiss the entire case.  Defendant claims that the Court cannot cure the misjoinder by dropping the nondiverse syndicates because they are indispensable under Rule 19.  Plaintiff asks the Court to exercise its discretion under Rule 21 and dismiss the syndicates because they are dispensable.  Resolution of the issue turns on whether those syndicates are indispensable under the three-part test of Rule 19.

The nondiverse syndicates are required parties under Rule 19(a).  Plaintiff's motion to amend specifically cited Rule 19(a) as the authority under which it could join the Lloyd's syndicates as parties.  The Court granted this unopposed motion and declines to revisit this determination.  The analysis proceeds to the second step.

Since Plaintiff has already joined the Lloyd's syndicates as defendants through the amended complaint, the issue becomes whether their joinder compromised diversity jurisdiction.  At the hearing on the motion, the Court found five Lloyd's syndicates nondiverse.  The joinder of these nondiverse defendants is inconsistent with the complete diversity rule, thereby depriving the Court of subject matter jurisdiction.  The analysis continues to the third step.

In the final step, the Court must decide whether the misjoined syndicates are dispensable.  If so, the Court can dismiss them pursuant to Rule 21 and reacquire subject matter jurisdiction.  The third step of the "[t]he Rule 19(b) inquiry is guided by pragmatic considerations, rather than technical or formalistic legal distinctions." Hooper v. Wolfe, 396

7

F.3d 744, 749 (6th Cir.2005) (citing HB Gen. Corp. v. Manchester Partners, L.P., 95 F.3d 1185, 1191 (3d Cir.1996) and Fed.R.Civ.P. 19 Advisory Committee Notes (1966 Am.)). "No one factor is dispositive, and a court must look at the factors together to determine if the action can continue or should be dismissed." Stanley Elec. Co., Inc. v. Crawford Equipment and Engineering Co., 249 F.R.D. 267, 273 (S.D. Ohio 2008). Ultimately, "the practicalities of the individual case" control the analysis. Keweenaw Bay Indian Community v. State, 11 F.3d 1341, 1346 (6th Cir.1993).

After review, the Court finds Defendant Lloyd's Syndicates 0510, 2791, 33, 0609, and 780 are dispensable parties. Beginning with the first factor, a resolution of the insurance coverage dispute in this matter will not prejudice the absent nondiverse syndicates because existing parties will adequately represent their interests.[5]  In deciding whether an absent party is adequately represented, a court should examine:

> whether 'the interests of a present party to the suit are such that it will undoubtedly make all' of the absent party's arguments; whether the party is 'capable of and willing to make such arguments'; and whether the absent party would 'offer any necessary element to the proceedings' that the present parties would neglect.

---

[5] Because the Sixth Circuit has never definitively ruled on the issue, the Court assumes, *arguendo*, that the "adequacy of representation" analysis is appropriate during the third part of the Rule 19 test. In Glancy, Judge Moore stated that "adequacy of representation" cannot be considered in determining whether a person or entity is a "required party" under Rule 19(a), but rather should be analyzed with the four 19(b) factors in the third step of the test. 373 F.3d at 667-70. Judge Moore did not, however, command a majority of the panel on this point. See id. at 677 (Rogers, J., concurring) (declining to join this conclusion); id. at 677-78 (Ryan, J., concurring in part and dissenting in part) (same); see also, American Express Travel Related Services, Co., Inc., 195 Fed.Appx. at 461 n.1 (applying the "adequacy of representation" test in the first part of the Rule 19 test).

8

American Express Travel Related Services, Co., Inc. v. Bank One-Dearborn, N.A., 195

Fed.Appx. 458 (6th Cir 2006) (quoting Shermoen v. United States, 982 F.2d 1312, 1318 (9th

Cir.1992)).   Defendant's prejudice argument is undermined because the nondiverse

syndicates' litigation goals are completely aligned with the diverse Lloyd's syndicates, TRE,

and the remaining subrogated insurer defendants.    All captioned Defendants seek

maximum coverage under the Hartford policy.   These parties will "undoubtedly" further the

maximum policy coverage position.   Defendant TRE is capable and willing to make such

an argument.   In fact, TRE has done so already with a motion for summary judgment on

its counterclaim seeking full coverage under the policy.   The absentee syndicates do not

offer a "necessary element to the proceedings" that the remaining Defendants would

neglect.[6]

   The second factor, the extent to which the Court can craft a judgment to avoid

prejudice, does not favor dismissing the entire case.   As explained above, the absent

syndicates suffer no prejudice because the remaining Defendants adequately represent

their interests.   The Court need not shape the relief to ameliorate the effects of prejudice

because the absentee syndicates suffer none.

   Turning to the third factor, adequacy of judgment, Hartford and TRE are essentially

litigating over whether, based on an insurance contract, Hartford owes a duty to defend and

a duty to indemnify TRE.   The absence of five nondiverse Lloyd's syndicates does not

---

   [6] By way of example, of the eight Lloyd's syndicates who subscribe to Cover
Note UM65015, only syndicate 033 was found nondiverse.   Syndicate 033 subscribes to
only 10.8696% of that note. (Doc. 52 Ex.G at 102).  The seven diverse syndicates
remain as defendant parties and their interests are indisputably aligned with that of
syndicate 033.

9

render a declaratory judgment between Hartford and TRE inadequate. Defendant's collateral estoppel argument, i.e., if dismissed, the nondiverse syndicates will litigate the coverage issue in the state court and this Court's ruling will have no effect, does not make a final judgment on the coverage issues between Hartford and TRE inadequate. Moreover, the estoppel argument is conditioned on the assumption that the nondiverse syndicates will receive an unfavorable disposition. This argument runs both ways. It is just as possible they could receive a favorable ruling. Additionally, Defendant's predictive estoppel analysis is conclusory. There is no legal certainty that a state court would reject, if issued, coverage declarations announced by this Court. See, Monat v. State Farm Ins. Co., 677 N.W.2d 843, 852 (Mich. 2004) (quoting Blonder-Tongue Laboratories, Inc. v. Univ of Illinois Foundation, 402 U.S. 313, 333-334 (1971)) ("no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, [the] decision will necessarily rest on the trial courts' sense of justice and equity."). The collateral estoppel argument is neutral in the analysis.

While the fourth factor favors dismissal of the case (a state court forum is available to litigate the coverage dispute) it does not outweigh the factors favoring dismissal of only the five nondiverse syndicates. See, Local 670 v. International Union, United Rubber, Cork, Linoleum and Plastic Workers of America, 822 F.2d 613, 622 (6th Cir. 1987) ("the potential existence of another forum does not, in and of itself, outweigh a plaintiff's right to the forum of his or her choice.").

Pragmatically, dismissing this entire action would force all parities to start over again in a different court. Restarting this litigation incurs additional expense while further delaying an adjudication on the merits. At its core, this is an insurance coverage dispute between

Hartford and TRE. The Lloyd's syndicates have a financial expectation based on future contingencies arising from this dispute. Hartford admittedly has no direct claim against the syndicates. The syndicates have no counterclaim against Hartford. The Court acknowledges that it might be desirable to have all of the subrogated insurers as defendants given the context of insurance coverage litigation. However, when given the choice between dismissing the entire case or allowing it to proceed while knowing that the remaining defendant parties will adequately represent the absentee syndicates' interests, "in equity and good conscience," the Court chooses the latter. Fed.R.Civ.P. 19; see, Fed.R.Civ.P. 19 Advisory Committee Notes (1966 Am.) ("When comprehensive joinder cannot be accomplished ... the case should be examined pragmatically and a choice made between the alternatives of proceeding in the absence of particular interested persons and dismissing the action.").

### B.    Rule 21

Upon a finding that the nondiverse syndicates are dispensable, the Court turns to question of who is dismissed under Rule 21. Defendant Certain Underwriters contends that the member-investor syndicates that comprise Lloyd's of London are best treated as unincorporated associations and the citizenship of each syndicate should be determined by reference to each member of the particular syndicate. (Doc. 54 at 13). Plaintiff Hartford does not directly dispute this contention. (Doc. 56 at 5, 9-10). Under the circumstances presented here, the Court characterizes the Lloyd's syndicates as unincorporated associations. See, Northland Ins. Co. v. Arthur Hill & Associates, 126 F.Supp.2d 1066 (E.D.Mich. 2001) (Citizenship of the individual syndicate members used to establish whether diversity jurisdiction existed in a case involving an insurance policy issued by

11

Lloyd's of London.).  Since each of the five Lloyd's syndicates has at least one member who is nondiverse, each syndicate is nondiverse.  The Court, seeking to retain subject matter jurisdiction, will exercise its discretion under Rule 21 and dismiss the nondiverse syndicates.

## V.    CONCLUSION

For the reasons stated above, Defendant Lloyd's of London Syndicates 0510, 2791, 33, 0609, and 780 are **DISMISSED** pursuant to Rule 21.  Accordingly, Defendant Certain Underwriters' Motion to Dismiss For Lack of Subject Matter under Fed. R. Civ. Pro. 12(b)(1) (Doc. 52) is **DENIED**.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: November 5, 2010

### CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
Case Manager

12

## Disability Management Services, Inc.

*A third party administrator for:*

### Certain Underwriters at Lloyd's, London

1350 Main Street, Springfield, MA 01103-1611
Tel: (413) 747-0990 or (800) 883-0596  Fax: (413) 747-1545

June 29, 2015

Jason P. Brand
23 Barrington Place
Melville, NY  11747

Re: Certificate Number:     1254480
    Claim Number:          2167

Dear Mr. Brand:

We write regarding Certificate 1254480 and to provide you with Certain Underwriters at Lloyd's, London's decision regarding your coverage and claim.  Based on the information we have gathered and reviewed, Certain Underwriters at Lloyd's, London have determined that Certificate 1254480 is rescinded as of its Effective Date, March 1, 2012 and that there is no coverage for your claim.  The following outlines the basis for this decision.

You completed the application for Certificate 1254480 on February 14, 2012 reporting $550,000 in annual income, that you were president of DASO Cleaning and Restoration, Inc., and that your daily duties were administrative, management and development.  You provided the following answers to questions on the application:

> On Page 1, question 5 "Are you a party to any legal proceeding at this time?" you responded "No".

> On Page 2, question 17. "Does your employer provide disability benefits or salary continuation benefits?" you responded "No".

> You initially did not provide a response to question 18 on Page 2; "Please list all disability insurance (including individual, group, mortgage, and credit plans) for which you are applying, have in force, or are reinstating.  If none, please indicate "None"." You later signed an Application Amendment Endorsement on March 1, 2012 amending your answer to question 18 to "Principal on January 15, 2012 with an $18,250 Monthly Benefit."

> You also initially did not provide a response to question 21 on page 4; "Last healthcare provider seen: a. Name & address, b. Date and reason last seen, c. Results of last visit". On the Application Amendment Endorsement you provided the following 21 a: "Dr. Steven Goldberg"; 21 b: "June 2011 routine physical"; and 21 c: "Fine".

*d/b/a: New England Claims Administration Services, Inc. in FL, MD, ME, TX
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a: Centre Claims Administration Services in NH*

Jason P. Brand
June 29, 2015
Page 2

On Page 3, question 22 "Have you ever been evaluated or treated for any injury, condition or disorder involving the following?", you responded "Yes" to "g. Back/spine neck". You further wrote "lumber back surgery 2001, 2009 diskectomy L5, L4 Dr. Gamache, NYP, Special Surgery".

On Page 4, question 29 "Within the last 5 years have you had x-rays, electrocardiograms, blood studies or other diagnostic tests?", you responded "Yes" and provided further details for question 29 with use of an arrow pointing to "lumbar disk surgery 2009"

On Page 4, question 35 "To the best of your knowledge and belief, are you in good health from any mental or physical impairment, except as described in this application?", you responded "Yes".

When you signed the application on February 4, 2012 you attested to the following statements:

IT IS UNDERSTOOD AND AGREED:

1. that all answers to the questions on this application, to the best of my knowledge and belief, are complete and true,

2. that all answers on this application shall form the basis of the issuance of any coverage hereunder,

3. that in the event of any fraud, misstatement, concealment, or failure to disclose information in response to any question on this application, whether intentional or inadvertent, any insurance coverage issued based upon this application may become void, and no benefits shall be payable, and

4. the insurance hereunder applied for shall take effect on the date set forth on the certificate, if issued, provided the first premium and all requirements are received within 31 days of the effective date and there have been no changes to any questions on this application between the date of application and the effective date of the certificate.

5. I have read or had read to me and understand each of the questions and statements on this entire application.

6. No one has prevented me from spending as much time as I felt was necessary to understand this application.

Prior to Certain Underwriters at Lloyd's, London issuing Certificate 1254480, you signed the Personal Disability Insurance Offer on March 1, 2012, attesting to the following statements:

17. PLEASE NOTE THIS OFFER IS BASED ON INFORMATION PROVIDED TO PETERSEN INTERNATIONAL UNDERWRITERS. IN THE EVENT ADDITIONAL INFORMATION IS DISCOVERED WHICH INDICATES MISSTATEMENT, CONCEALMENT OR FAILURE TO DISCLOSE, WHETHER INTENTIONAL OR INADVERTENT, ANY COVERAGE ISSUED OR OFFER MADE MAY BE MODIFIED OR VOIDED.

Jason P. Brand
June 29, 2015
Page 3

You also signed a Back Warranty Endorsement on March 1, 2012 attesting to the following statement:

> I hereby confirm that in the last ten (10) years, other than issues related to my low back, I have had no back and/or neck pain or discomfort which required medication (including non-prescription medicine) for more than five (5) consecutive days or visits to any health professional(s).

> I further confirm that in the last ten (10) years, other than issues related to my low back, I have had no back and/or neck pain or discomfort which limited my daily activities or work performance for more than five (5) consecutive days.

The underwriters relied on your representations during the application process, including your answers to questions on the Application For Disability Insurance you completed on February 14, 2012, your Application Amendment Endorsement signed March 1, 2012, the Back Warranty Endorsement signed March 1, 2012, and your completion of the Personal Disability Insurance Offer on March 1, 2012. Certificate 1254480 was subsequently issued on March 2, 2012 providing, in the event of disability as defined by the Certificate, a $10,800 monthly benefit after a 90-day Elimination Period for a maximum period of 60 months and included a Residual Disability Benefit Rider and a Cost of Living Benefit Rider. Certificate 1254480 also provided a $1,000,000.00 lump sum benefit after a 63 month Elimination Period.

On November 7, 2014 you provided notice of claim. Based on the information you submitted in claim forms, in telephone calls and in emails, you reported partial disability beginning October 2, 2014 and Total Disability beginning October 21, 2014 due to difficulty with neck pain, including hand numbness and headaches. You completed the Claimant's Statement reporting that you were owner/operator of five businesses; DASO Cleaning & Restoration, DASO Development, 1Stop Medical/Superior Maintenance Supply, Superb Security and Unique Auto. You also reported working approximately 35 hours per week as an IT professional for Narco Freedom, a non-profit organization.

In order to evaluate your claim we requested Proof of Loss including medical, financial and occupational information. We requested copies of your medical records from all identified providers, and we asked you to submit documentation of your work activities and the earnings derived from those work activities for each of your businesses during the period January 1, 2013 through the present. We also independently researched information regarding your businesses.

Review of the available medical records reveals that you were under the care of health professionals for complaints of neck pain as early as 2006. A June 29, 2006 medical note from Dr. Stephen Goldberg reflects that you were receiving acupuncture for cervical radiculopathy. You underwent an MRI on November 10, 2009 which revealed mild annular bulge with right lateral recess disc herniation at C3-4 level with flattening of the sac without cord compression. You reported complaints of neck pain, stiffness and decreased range of motion. An evaluation with neurologist Dr. Rose Marie Mathew on December 10, 2009 states, "reestablish neurological care for lower back and neck discomfort." You reported neck pain, having had trigger point injections that offered temporary relief, but that your pain was worse by the end of the day.

Between December 31, 2009 and March 26, 2010 you attended ten physical therapy sessions with Jacqueline Caufield, PT of ProHealth Care Associates for complaints of cervical pain and headaches. These records also include a January 12, 2010 evaluation by Dr. Alan Millman reflecting your complaints of cervical pain. Dr. Millman diagnosed cervical disc displacement and cervicogenic

Jason P. Brand
June 29, 2015
Page 4

headaches and administered a series of three cervical epidural steroid injections over the course of approximately three months. You returned to Dr. Millman again on August 19, 2010 reporting that your symptoms were starting to return, and he recommended additional physical therapy.

On February 11, 2011 you sought care from Dr. Semih Gungor for complaints of neck and back pain; these records reflect that you were seeing a pain management specialist for cervical epidural injections. Dr. Gungor opined that you had cervical stenosis with radiculopathy and lumbar radiculopathy. You returned to Dr. Gungor for complaints of cervical pain again on March 4 and 11, 2011. On April 1, 2011 you reported to Dr. Gungor that your neck pain interfered with activities of daily living and work; Dr. Gungor reported that consideration was being given to cervical epidural steroid injections. You again returned with cervical complaints on May 5, 2011 and received epidural injections at C6-7 for cervical radiculopathy.

You were seen by Dr. Dexter Sun on March 1, 2012 for complaints of neck pain, and scheduled for EMG and nerve conduction studies. On that same day you signed the Back Warranty Endorsement attesting that in the last ten years you did not have any neck pain or discomfort requiring medication for more than 5 consecutive days or visits to any health professionals.

You continued with treatment for cervical complaints and underwent EMG and nerve conduction studies on March 2, 2012; Dr. Sun diagnosed cervical radiculopathy. You again saw Dr. Sun on May 2, 2012 for an epidural injection to the C-spine, on February 11, 2013 reporting complaints of neck pain and numbness in your mid-back, and on November 12, 2013 reporting complaints of cervical spine pain with Dr. Sun offering epidural injections.

Your answers to Certificate 1254480, Questions 21, 22, 29 and 35 as outlined above are misstatements and/or concealments that are inconsistent with the medical records we obtained which reflect your history of treatment for complaints of neck pain, including diagnosis and conservative treatment of symptoms related to herniated cervical disc and cervical radiculopathy prior to the application for Certificate 1254480. Further, your completion of the Back Warranty Endorsement on March 1, 2012 is inconsistent with your treatment on the same day with Dr. Dexter Sun for cervical complaints and his advice for EMG and nerve conduction studies.

The underwriter has reviewed this information and determined that the above misrepresentations are material misrepresentations and that, had they known of your complete medical history including your complaints and treatment related to your neck, that you were seen for neck pain and additional testing was recommended on the same day that you signed the Personal Disability Offer and Back Warranty Endorsement on March 1, 2012, Certificate 1254480 would not have been issued.

This information has been reviewed by our client, Certain Underwriters at Lloyd's London, who agree that the above misrepresentations are material misrepresentations and no coverage would have been issued. Accordingly, Certificate 1254480 is rescinded and the Certificate is void and terminated as of the Effective Date, March 2, 2012. Since Certificate 1254480 is rescinded and void, there is no coverage available you and your claim for disability benefits is denied.

Enclosed is a Rescission Endorsement along with a check numbered 24456 for $11,265.69 representing full refund of all premiums you paid for Certificate 1254480. Please understand that your act of cashing the enclosed check is your agreement that Certificate 1254480 is rescinded and the coverage under this Certificate is void and terminated as of the Effective Date, March 2, 2012.

Jason P. Brand
June 29, 2015
Page 5

Furthermore, even if the Certificate was not rescinded, your claimed disabling condition would not be a covered loss under the Exclusions provision of the Certificate.

The Exclusions provision of Certificate 1254480 states:

> No benefits will be paid due to Sickness or Injury caused by, contributed to by or related to the following and/or their treatments and/or complications thereof (unless deleted by endorsement):
>
> 7.   Mental or Nervous Disorders;
>
> 8.   Pre-Existing Conditions;

Mental or Nervous Disorders and Pre-Existing Conditions are defined by Certificate 1254480 as follows:

> Mental or Nervous Disorders means any condition which includes any form of neurotic or psychotic condition or behavioral disorder due to any cause. Conditions may include, but are not limited to:  psychiatric disorders, manic disorders, paranoia, schizophrenia, personality disorders, depression, anxiety, or any form of chemical imbalance affecting the brain.
>
> Pre-Existing Conditions are physical, mental or chemical conditions which arise from any Accident or Sickness which was:
>
> 1)   not disclosed on the application, and
> 2)   for which You sought any medical advice or treatment prior to the effective date of this insurance or which caused symptoms for which an ordinarily prudent person would have sought medical advice.

Review of the medical records outlined above reveals that your neck pain, including but not limited to diagnoses of cervical radiculopathy, herniated cervical disc, cervical stenosis and cervicogenic headaches is a Pre-Existing Condition because you sought medical advice for neck pain and related symptoms prior to the effective date of coverage, and you did not disclose your neck pain and related treatment on the February 14, 2012 application for Certificate 1254480, nor in any subsequent Application Amendment.

Finally, even if the Certificate was not rescinded, and if your condition was not pre-existing, we have several concerns regarding your claim, and it does not appear that you have met the Certificate's definition of Total or Residual Disability.  We have concerns regarding your reported occupation, work activities and disability insurance coverage on the application for Certificate 1254480, as well as your occupation, work activities, earnings, and any restrictions and limitations at the time you report disability began.  We also have concerns that you stopped work on October 21, 2014 for reasons unrelated to Injury or Sickness.  The bases for these concerns are outlined further below.

Certificate 1254480 defines Total Disability and Residual Disability as follows:

> Total Disability means that due to Sickness or Injury You cannot engage in Your occupation.

Jason P. Brand
June 29, 2015
Page 6

Residual Disability means that You are able to engage in Your occupation, but Your income has dropped by a minimum of fifteen percent (15%) due to an Injury or Sickness, If your income has dropped by more than eighty percent (80%) due to an Injury or Sickness you will be considered Totally Disabled.

Certificate 1254480 also states:

Sickness, Illness means a Sickness or disease which causes a disability while this certificate is in force and is not a Pre-Existing Condition.

Regular Care means direct advice or direct supervision of treatment of therapy by a physician who is competent to advise or supervise Your disability.

Under Section 1, Accident and Sickness Total Disability Coverage, the Certificate further states, in part:

Total Disability must result form in Injury that occurs while this certificate is in force and causes a disability that begins within 365 days from the date of the Injury; or Sickness that causes a disability while this certificate is in force. To be eligible for Total Disability benefits You must be under the Regular Care of a Physician, other than Yourself.

We attempted to verify the duties of your occupation. We reviewed information you submitted regarding your businesses and work activities. We also conducted independent investigation, and obtained research related to your businesses. You completed the Occupational Duties Forms on November 19, 2014 and December 8, 2014 describing your duties for your five businesses as well as your IT job for Narco Freedom. You also submitted your 2011, 2012 and 2013 tax returns. Review of these records reveals that at the time you completed the application for Certificate 1254480 you were owner/operator of as many as six businesses, including the five businesses you reported at the time of claim, as well as B&C Management. We also understand that you have been employed with Narco Freedom since approximately 1997. Your description of your work duties as reported on the Occupational Duties Forms reflects activities of oversight, business networking, estimating and other administrative duties as well as manual labor, installing security systems, construction work, maintaining inventory, and installing IT networks. This information is not consistent with your occupation as you represented on the application when you reported to be president of DASO Cleaning & Restoration which did not list any manual labor or duties, rather you described daily duties of administrative, management and development.

At the time you applied for coverage you did not provide information regarding your work activities in your five other businesses, DASO Development, Superior Maintenance & Supply, Superb Security, Unique Auto and B&C Management, as well as your employment and work activities with Narco Freedom, which you describe included manual labor. We also understand that through your employment with Narco Freedom you have employer-sponsored long-term disability insurance providing coverage up to 60% of your wages. While we have not been able to establish the effective date of your current coverage with CIGNA, we have concerns that you may have been covered by an employer-sponsored long-term disability plan that you did not disclose when you applied for Certificate 1254480.

Jason P. Brand
June 29, 2015
Page 7

Court records also reveal that you and one of your businesses, Superior Maintenance were named defendants in a lawsuit. Plaintiff Medstock alleged your involvement in racketeering and corruption by price-fixing and diverting customers to Superior Maintenance Supply. The original motion was filed on September 29, 2011 and as of October 29, 2012 the case continued with motions to submit arguments. Accordingly, the lawsuit was active and you were a party in this legal proceeding at the time you completed the application for Certificate 1254480, and answered "no" to Question #5 "Are you a party to any legal proceeding at this time."

We also have questions regarding your description of your work activities at the time you report partial disability and total disability began; October 2, 2014 and October 21, 2014 respectively. Despite our several requests for evidence of your reported work duties you did not submit sufficient Proof of Loss to establish the duties you were performing and income you were earning at the time disability began, as well as those duties you continued to attempt and earnings you were receiving following your reported disability. You submitted and we reviewed copies of your business and personal Federal Income Tax Returns 2011 – 2013, copies of 2014 W-2 statements from Narco Freedom, DASO Development, DASO Cleaning & Restoration and Superior Maintenance Supply, payroll statements from Superior Maintenance dated December 27, 2013 and Daso Development dated December 28, 2013. You submitted over 120 emails, several with attachments, reflecting job estimates or bids, pictures of equipment and supplies and operational manuals. You also submitted a copy of a handwritten calendar which appears to reflect the period January 1, 2014 through July 11, 2014.

Review of the submitted employment records reflects that only a portion of the emails provided evidence of work conducted/completed, such as invoices, supply orders, work permits and email communication with customers. However, many of these were dated in 2013 and do not provide evidence of the duties you performed. Review of your handwritten calendar reveals apparent addresses, meetings and/or job sites, but does not provide evidence of your work activities. Despite the voluminous records you submitted, we do not have evidence of your work activities and resulting earnings from all five of your businesses and your IT job.

Further, independent investigation revealed that on October 16, 2014 you were indicted by the New York Attorney General on charges of Insurance Fraud in the First Degree and Grand Larceny in the First Degree. This indictment identifies you as Chief Information Officer of Narco Freedom and also names Narco Freedom and DASO Development under the same charges. The indictment alleges that between May 8, 2009 and April 23, 2013 you acted as a high managerial agent/executive of Narco Freedom and were involved in unlawfully diverting funds to you and your personal businesses by means of excessive compensation, soliciting kickbacks, self-dealing transaction and other schemes. As a direct result of the indictment it was mandated that you sever your relationship with Narco Freedom and that you are excluded from any activity relating to furnishing medical care, services or supplies for which claims are submitted for payment by the Medicaid program. The indictment also alleges that Narco Freedom was the sole material customer of DASO Development.

The New York Attorney General previously advised Narco Freedom of the investigation and as a result, on July 25, 2014 you were terminated at Chief Information Officer, your bank signatory authority was revoked and you were not allowed access to Narco Freedom offices. It appears that on July 29, 2014 you were reinstated as an employee with the agreement that Narco Freedom would no longer purchase goods and services from your businesses. You were ultimately arraigned on October 22, 2014, the day after you claim your Total Disability began, on the charges of insurance fraud and grand larceny. We understand that as a part of the indictment, certain assets were frozen and seized by the court. These records are not available to the public and therefore we are uncertain of the impact

Jason P. Brand
June 29, 2015
Page 8

this may have on your ability to act on behalf of your businesses. According to research we obtained it appears that on or about March 18, 2015 you were again indicted on similar, updated charges of enterprise corruption related to fraudulent Medicaid charges.

We discussed your claim for benefits in detail on two occasions, November 26, 2014 and March 12, 2015, including the details of your reported disability, occupational activities and the need for Proofs of Loss. In these telephone conversations, in other brief telephone calls and in the numerous emails you submitted you did not advise us of the New York State investigation of the activities between Narco Freedom and your businesses that led to your indictment on several charges, your arraignment on October 22, 2014 and the subsequent seizure of certain assets. In our telephone discussion on November 26th, you reported that you were on leave from Narco Freedom under the Family and Medical Leave Act. In a brief call on January 7, 2015 you reported that FMLA was never approved by your employer and you did not know the reason for this. In our March 12th telephone call you reported that you believe an employee had stole money from your business over the last year-and-a-half and as a result your business records were not in order. You described that there were errors in your records and that over $200,000 in checks were cashed that cannot be accounted for. You then advised that you had been legally evicted from your business location and that all of your records as well as equipment and supplies are in a storage container that you cannot access. You discussed that you believe your attorney had resolved the matter, yet the court did not verify receipt of the rent and therefore the judgment went against you and that you will need to further this matter in court in order to gain access the storage container.

Accordingly, given insufficient evidence of your work activities and the circumstances involving the pending charges related to insurance fraud, Medicaid fraud and grand larceny, we have concerns regarding the extent of your work activities, specifically those duties you performed between July 2014 when your employment with Narco Freedom was in jeopardy and in October 2014 when you were initially indicted, arraigned and certain assets were frozen. You have not provided satisfactory proof of your occupation, or the duties you were performing, if any, when your claimed disability began.

We further attempted to understand any restrictions or limitations you may have due to Injury or Sickness, and considered the definitions of Total and Residual Disability in your Certificate. We reviewed your medical records as well as information we obtained from your other disability carriers, including Principal Financial Group and CIGNA. Review of your medical records revealed that at the time you report partial disability, October 2, 2014 and later total disability on October 21, 2014 you were not under the Regular Care of a physician for your claimed disabling condition. You first sought treatment for complaints of neck pain during your claimed disability with Dr. Vaynman on November 6, 2014. Our nurse consultant has reviewed all of your medical records and opined that between November 6, 2014, the date you first saw Dr. Vaynman, and January 14, 2015, the date you underwent surgery, you were capable of sedentary demands. In our November 26, 2014 telephone discussion you reported that you continued to attend to work activities for your businesses but that you felt you were not accomplishing anything. You report attending to job sites, writing estimates and preparing invoices. However you have not submitted any evidence of your work activities to establish the duties you were performing prior to October 2, 2014 when you report partial disability began and those work activities you continued to perform and any resulting loss of earnings leading up to January 14, 2015 when you underwent surgery. It appears that you may have been legally, contractually and/or financially restricted from certain work activities following the indictment on October 16, 2014, resulting in your severance from Narco Freedom, exclusion from the Medicaid program and the seizure of certain assets by the court.

Jason P. Brand
June 29, 2015
Page 9

We also received information from Principal Financial Group and CIGNA which reveals that you reported disability beginning October 21, 2014 due to major depressive disorder, later followed by a physical illness related to your neck in February 2015 and your right shoulder March 2015.  While you have not made a claim for a mental/nervous disability under this Certificate, as noted above, disability due to major depressive disorder, a mental or nervous disorder, is excluded under the Certificate.

In summary, even if Certain Underwriters at Lloyd's, London did not rescind Certificate 1254480, your claim for partial disability beginning October 2, 2014 and total disability beginning October 21, 2014 is not compensable because your claimed condition related to neck pain is a pre-existing condition and is excluded from coverage.  Further, you have not submitted sufficient evidence of work activities; including any manual labor you performed, the frequency you performed those activities and the earnings you derived from those activities prior to your reported disability; you were not under the Regular Care of a physician at the time you claim your disability began; and there is no medical evidence supporting restrictions and limitations from a sedentary work capacity at the time you report disability began.  Finally, to the extent your claimed disability may be caused or contributed to by a mental or nervous disorder; this is also excluded under the Certificate.

The Certificate includes the following Grievance Procedures in the event you are dissatisfied:

> Should You be dissatisfied with any claim or administration issue, the following steps apply. Notwithstanding any other item set forth herein, the parties hereby agree that any dispute which arises shall follow these procedures:

> 1. General Inquiry: At any time You have the right to communicate with Us, either directly or through a representative, to seek clarification and assistance on any issue.

> 2. Informal Review: Should You not be satisfied with the response from Your General Inquiry, You have the right to request an Informal Review. This Informal Review should be requested in writing, but may be verbally requested. The Informal Review should be requested within sixty (60) days following the claim or administrative decision, but in no case before such claim or administrative decision. Underwriters shall respond within a reasonable amount of time.

> 3. Formal Review. Should You still not be satisfied with the response You received through an Informal Review, then You have the right to request a Formal Review. Please provide a written summary of the issue and any items which may be useful for Us to review. A Formal Review must be requested no more than ninety (90) days following an Informal Review. Underwriters shall respond to Your request within a reasonable amount of time.

> 4. Legal Action. No legal action may be brought to recover under the insurance described in this certificate until after the response of a Formal Review. No action may be brought more than one year after the date of the original claim or administrative decision. Legal Action shall not take place prior to a Formal Review.

Jason P. Brand
June 29, 2015
Page 10

Should you wish to take this matter up with the New York State Department of Financial Services, you may file with the Department either on its website at www.dfs.ny.gov/consumer/fileacomplaint.htm or you may write or visit the Consumer Services Bureau, New York Department of Financial Services at one of these locations:

25 Beaver Street
New York, NY 10004

One Commerce Plaza
Albany, NY 12257

200 Old Country Road, Suite 340
Mineola, NY 11501

Walter J. Mahoney Office Building
65 Court Street
Buffalo, NY 14202

I am available at (800) 883-0596 Ext. 1160 should you have any questions.

Sincerely,

Mary K. McFaul, ALHC
Senior Claim Consultant

Enc.     Rescission Endorsement
         Check #24456

**From: David Glenn** dglenn@rampartinsurance.com
**Subject:** Fwd: Jason Brand -- Petersen Past Due Invoice
**Date:** June 24, 2015 at 5:16 PM
**To:** Jason Brand 'Jasonb8293@aol.com'

David Glenn
O-516-390-3638
C-917-912-0212
EFax-516-390-3639

-------- Original message --------
From: Sandy Weisman <Sandy.Weisman@rampartlife.com>
Date: 06/24/2015 4:44 PM (GMT-05:00)
To: David Glenn <dglenn@rampartinsurance.com>
Subject: FW: Jason Brand -- Petersen Past Due Invoice

Good Afternoon – As you are aware, the policy that Jason Brand has with Lloyds of London through Petersen International Underwriters is past due and he is currently without coverage.  The grace period will expire on July 1, 2015 if the premium is not remitted.  To date, Petersen has not received this.  Have you had an opportunity to discuss this with your client and do you know if he will be remitting the premium due or if it is his intention to let this lapse?

Please contact me if I can be of any assistance.
**Thank you**
**Sandy Weisman**
**Rampart America, 2005 South Easton Road, Suite 202, Doylestown PA 18901**
**Phone 267-880-0900 Ext. 3545     Fax 267-224-4542**

**From:** Sandy Weisman

**Sent:** Friday, June 12, 2015 2:48 PM
**To:** David Glenn (dglenn@rampartinsurance.com)
**Subject:** FW: Jason Brand -- Petersen Past Due Invoice
**Importance:** High

Hello --- I apologize – the grace period **will expire on July 1, 2015 NOT on July 2nd**.

**Thank you**
**Sandy Weisman**
**Rampart America, 2005 South Easton Road, Suite 202, Doylestown PA 18901**
**Phone 267-880-0900 Ext. 3545    Fax 267-224-4542**

---

**From:** Sandy Weisman
**Sent:** Friday, June 12, 2015 2:47 PM
**To:** David Glenn (dglenn@rampartinsurance.com)
**Subject:** Jason Brand -- Petersen Past Due Invoice

Good Afternoon,

I have just received a past due notice from Petersen International Underwriters for your client, Jason Brand.

You may recall, last year Jason submitted a credit card authorization to have payments drafted via his credit card.  I have been advised that Petersen's was unable to process the quarterly premium due June 1, 2015 with the credit card they have on file as it was declined.  I have attached a payment authorization form for Mr. Brand to complete and return and a copy of the past due notice.  Could you please reach out to your client asap as the 30 day grace period will expire on July 2, 2015.

Please note, the carrier did send a copy of the invoice directly to your client when the credit card payment did not go through.

Thank you,
Sandy



# PETERSEN
## INTERNATIONAL
## UNDERWRITERS

# PRODUCER COPY

### PREMIUM INVOICE

Invoice # 1254480-0615

Date: 06/04/2015

**Producer's Information:**
WHITNEY RAMPART ASSOCIATES, LLC
2005 S. EASTON ROAD, SUITE 202
DOYLESTOWN, PA 18901
(800) 915-8970

**Owner:**
JASON PETER BRAND
23 BARRINGTON PLACE
MELVILLE, NY 11747

| | |
|---|---|
| **Insured:** | JASON PETER BRAND |
| **Certificate #:** | 1254480 |
| **Policy Term:** | 03/01/2012 - 02/28/2017 |
| **Coverage Type:** | Disability |



| Current Billing | | Amount |
|---|---|---|
| Payment for Period: | 06/01/2015 - 09/01/2015 | $865.26 |
| Premium Due By: | 06/01/2015 | |
| | **Total** | **$865.26** |

Please complete and return with your payment:
1. Payment Authorization Form
We have been unable to process the credit card on file.

### Would You Like to Pay this Invoice Online?

For your convenience we now offer an online payment option. If you would like to complete your payment online please visit payment.piu.org

**Here is your log in information:**   Certificate # [ 1254480 ]   Payment Code [ 56F675 ]

Please make all premium payments payable to Petersen International Underwriters
Please note alternate payment modes may be available.
Please contact Petersen International Underwriters for additional information.

## Petersen International Underwriters

23929 Valencia Boulevard, Second Floor, Valencia, CA 91355
(661) 254-0006 (800) 345-8816 Facsimile (661) 254-0604

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF SUFFOLK

-------------------------------------------------------------------x

WELLS FARGO BANK, N.A.,                              Index No. : 612239/2015

                                        Plaintiff,

            -against-                                **NOTICE OF MOTION FOR
                                                     SUMMARY JUDGMENT, TO
                                                     APPOINT A REFEREE TO
                                                     COMPUTE AND TO AMEND
                                                     CAPTION**

JASON P. BRAND; SAMANTHA L. BRAND; CLERK
OF THE SUFFOLK COUNTY DISTRICT COURT;
CITIMORTGAGE, INC.; ERIC T. SCHNEIDERMAN,
ATTORNEY GENERAL OF THE STATE OF NEW
YORK; RBS CITIZENS, N.A. N/K/A CITIZENS BANK,
N.A.; STATE OF NEW YORK; "JOHN DOES" and "JANE
DOES," said names being fictitious, parties intended being
possible tenants or occupants of premises, and
corporations, other entities or persons who claim, or may
claim, a lien against the premises,

                                        Defendants.

-------------------------------------------------------------------x

MOTION BY:                              Plaintiff


DATE, TIME & PLACE                      July 14, 2016, at 9:30 am
                                        Suffolk County Supreme Court
                                        1 Court Street
                                        Riverhead, NY 11901

RELIEF REQUESTED:

To award plaintiff summary judgment against JASON P. BRAND pursuant to CPLR R3212; to strike the answer interposed on behalf of defendant JASON P. BRAND and deem it an appearance and waiver in foreclosure; to award plaintiff default judgment against all remaining non-answering and non-appearing defendants; to appoint a Referee to compute the sums due and owing to plaintiff; to amend the caption to strike "JOHN DOES" and "JANE DOES"; and for such other and further relief as to this Court may deem just and proper.

SUPPORTING PAPERS:

Affirmation of Douglas A. Bass, Esq. dated June 14, 2016 , Affidavit of Susana Leal-Salgado, sworn to on May 13, 2016.

TYPE OF ACTION:

Foreclosure

ANSWERING PAPERS:

Pursuant to CPLR 2214(b), answering papers, if any, are to be served seven (7) days prior to the return date of this motion.

Dated: June 14, 2016

Batavia, New York

By: _Douglas A. Bass_

Douglas A. Bass, Esq.

**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Plaintiff
26 Harvester Avenue
Batavia, NY 14020
585.815.0288

WE ARE A DEBT COLLECTOR AND ARE ATTEMPTING TO COLLECT A DEBT. ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.


TO:

HAROLD SELIGMAN, ESQ.
ATTORNEY FOR DEFENDANT
JASON P. BRAND
120 FOURTH AVENUE
BAY SHORE, NY 11706

SAMANTHA L. BRAND
23 BARRINGTON PLACE
MELVILLE, NY 11747

3 of 4

**ORDERED**, that the caption be amended by striking therefrom the names of 'JOHN DOES' and 'JANE DOES,' such names being fictitious; and all papers and proceedings heretofore filed herein shall be deemed amended accordingly; and it is further

**ORDERED,** that the caption as amended shall read as follows:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

-------------------------------------------------------------------x

WELLS FARGO BANK, N.A.,                          Index No.: 612239/2015

                         Plaintiff,

             -against-

JASON P. BRAND; SAMANTHA L. BRAND; CLERK
OF THE SUFFOLK COUNTY DISTRICT COURT;
CITIMORTGAGE, INC.; ERIC T. SCHNEIDERMAN,
ATTORNEY GENERAL OF THE STATE OF NEW
YORK; RBS CITIZENS, N.A. N/K/A CITIZENS
BANK, N.A.; STATE OF NEW YORK;
                         Defendants.

-------------------------------------------------------------------x

and it is further

**ORDERED,** that a copy of this Order with Notice of Entry shall be served upon the owner of the equity redemption, any tenants named in this action and any other party entitled to notice.

                         E N T E R  DATE: _____


                         _____
                                    J.S.C.

and default judgment against all remaining, non-answering and non-appearing defendants; and it is further

  **ORDERED,** that this action be and the same hereby is referred to

_____ Esq., having an office

at _____ _____ ),

telephone number _____ as Referee to ascertain and compute the amount due to Plaintiff herein, for principal, interest, and other disbursements advanced as provided for by statute and in the note and mortgage upon which this action was brought, to examine and report whether or not the mortgaged premises should be sold in parcels; and it is further

  **ORDERED,** that, if required, said Referee take testimony pursuant to RPAPL § 1321, and it is further

  **ORDERED,** that by accepting this appointment the Referee certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCCR Part 36) including, but not limited to Section 36.2(c) ("Disqualification from Appointment") and Section 36.2(d) ("Limitations on Appointments Based on Compensation"), and it is further

  **ORDERED,** that pursuant to CPLR 8003(a)(the statutory fee of $50.00)(in the discretion of the Court, a fee of $_____ ), shall be paid to the Referee for the computation stage and upon the filing of his/her report; and it is further

  **ORDERED,** that the Referee is prohibited from accepting or retaining any funds for him/herself or paying funds to him/herself without compliance with Part 36 of the Rules of the Chief Administrative Judge, and it is further

  **ORDERED,** that the Plaintiff has complied with the requirements of CPLR § 3408; Plaintiff may proceed with the action herein; and it is further

satisfaction of this Court from the aforesaid documents that this action was brought to foreclose a mortgage on real property situate in the County in which this Court is located; that the entire unpaid balance secured thereby is due and owing; and that the Summons and Complaint was duly served upon all defendants and that the time prescribed by law to answer has expired, the same not being extended, and that all of the defendants herein have defaulted in pleading, or have appeared and waived notice of this application except defendant JASON P. BRAND, who appeared herein and interposed an answer with affirmative defenses to the complaint; and it appearing that none of the defendants is an infant, incompetent or absentee; and that the notice of pendency of this action was filed more than 20 days prior hereto; and that since the filing of said notice; the Summons and Complaint herein have not been amended by adding new parties to this action, or so as to extend the claim of the Plaintiff against the mortgaged premises; and on all the pleadings and papers heretofore filed herein; and the proceedings heretofore had herein; and

_____ appearing in opposition hereto; and after due deliberation,

NOW, on motion of ROSICKI, ROSICKI & ASSOCIATES, P.C., attorneys for Plaintiff, it is

**ORDERED,** that the motion for summary judgment is granted and the answer of JASON P. BRAND is stricken; and it is further

**ORDERED,** that the answer interposed by defendant JASON P. BRAND be and hereby is deemed the usual appearance and waiver in foreclosure, requiring service of only Notice of Sale, Notice of Proceedings for Surplus Monies, and Notice of Discontinuance of Action upon said Defendant; and it is further

**ORDERED,** that Plaintiff is awarded summary judgment against JASON P. BRAND;

At an IAS Term, Part ___, of the
Supreme Court of the State of New
York, held in and for the County of
Suffolk, at the Courthouse located at
400 Carleton Avenue, Central Islip,
NY 11901 on the ____ day of
_____, 20__.

P R E S E N T : Hon. _____

-------------------------------------------------------------------x

WELLS FARGO BANK, N.A.,                                  Index No.: 612239/2015

                                          Plaintiff,  **ORDER GRANTING SUMMARY**
                                                      **JUDGMENT, APPOINTING A**
                                                      **REFEREE TO COMPUTE AND**
                                                      **AMENDING CAPTION**

                    -against-

                                                      Premises Address:
JASON P. BRAND; SAMANTHA L. BRAND; CLERK   23 BARRINGTON PLACE
OF THE SUFFOLK COUNTY DISTRICT COURT;      MELVILLE, NY 11747
CITIMORTGAGE, INC.; ERIC T. SCHNEIDERMAN,
ATTORNEY GENERAL OF THE STATE OF NEW       SBL#: 271.00 /02.00/028.000
YORK; RBS CITIZENS, N.A. N/K/A CITIZENS BANK,
N.A.; STATE OF NEW YORK; "JOHN DOES" and "JANE
DOES," said names being fictitious, parties intended being
possible tenants or occupants of premises, and
corporations, other entities or persons who claim, or may
claim, a lien against the premises,

                                          Defendants.

-------------------------------------------------------------------x

Upon reading and filing of the Notice of Motion dated *June 14, 2016* , the

Affirmation of Douglas A. Bass,Esq., of Rosicki, Rosicki & Associates, P.C., dated *June 14, 2016*

, the Affidavit of Merit and Amounts Due of Susana Leal-Salgado, sworn to on May 13, 2016;

with exhibits annexed including the Summons and Complaint duly filed in the Office of the

Clerk of the County of Suffolk on November 19, 2015, and Notice of Pendency, duly filed in the

Office of the Clerk of the County of Suffolk, on November 19, 2015; and on the affidavits of

service thereon upon the several defendants herein, all duly filed; and it appearing to the

Index No.: 612239/2015

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

WELLS FARGO BANK, N.A.

                                        Plaintiff,

              -against-

JASON P. BRAND; SAMANTHA L. BRAND;, et al.,

                                        Defendants.

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO APPOINT A REFEREE TO COMPUTE AND TO AMEND CAPTION**

**ROSICKI, ROSICKI & ASSOCIATES, P.C.**

BY: _____
        Douglas A. Bass, Esq.
        *Attorneys for Plaintiff*
        26 Harvester Avenue
        Batavia, NY 14020
        585.815.0288
        RR&A No.: 15-009539

4 of 4

EXHIBIT F

SUPREME COURT
County of SUFFOLK            : State of New York
WELLS FARGO BANK NA

                                    Plaintiff,        Index No.: 612239/2015

            v.
                                                      VERIFIED ANSWER TO
                                                      FORECLOSURE COMPLAINT
                                Defendant(s).
JASON P BRAND, ET AL

Defendant JASON P BRAND _____ answers as follows:

General Denial.

☐ Plaintiff, upon information and belief, does not own the note and mortgage. Because
   ownership is an element of a foreclosure cause of action, Plaintiff has no right to foreclose.

**I plead the following Defenses and Affirmative Defenses:**

☐ Lack of Standing to Sue:  Plaintiff does not have standing to sue because it was not the legal
   owner of the Note and/or Mortgage at the time it commenced this foreclosure lawsuit.

☐ I have no knowledge that the plaintiff was assigned my debt or there was no Affirmative
   Allegation of Standing (NY Real Property Actions and Proceedings Law § 1302, high-cost
   and subprime home loans):  Plaintiff failed to allege in the Foreclosure Complaint that it is
   the legal owner and holder of the Note and/or Mortgage or has the authority to foreclose.

☑ Improper Service of the Summons and Complaint (NY Civil Practice Law and Rules § 308)
   for the following reason: I HAVE NOT BEEN SERVED ON THIS MATTER,
   _____

☐ I did not receive the notice of default required by my mortgage agreement, and the mailing of
   this notice is a condition precedent to the foreclosure.

☑ 90-Day Pre-Foreclosure Notices (NY Real Property Actions and Proceedings Law § 1304)
   were inadequate because (*check one or both if applicable*):
   ☑ Two copies not delivered.
   ☑ Foreclosure lawsuit filed within 90 days of Pre-Foreclosure Notices.

☐ I did not receive the notice "Help for Homeowners in Foreclosure" that was supposed to be
   served with the Foreclosure Summons and Complaint (NY Real Property Actions and
   Proceedings Law Section 1303).

☐ An active servicemember is an owner of the property and is on the mortgage and qualifies for
   Active Military Service protections under state or local law (Federal Servicemembers Civil
   Relief Act, 50 App. U.S.C. 501 et seq.; and New York State Soldiers' and Sailors' Civil
   Relief Act, NY Military Law Section 300 et seq.)

☐ Homeowner's Mental Disability or Incompetence (NY Civil Practice Law and Rules Section
   1202)

■ I am eligible for the Home Affordable Modification Program ("HAMP") because my loan is secured by a one-to-four unit property, coop, or condo, this is my principal residence, the loan was originated on or before January 1, 2009, and I cannot afford my monthly mortgage payments. The loan servicer failed to comply with HAMP for the following reason(s) (*check one or both if applicable*):

   ■ Chapter II, Section 3 of the MHA Handbook prohibited the servicer from referring my loan to foreclosure. To my knowledge, I have not been evaluated for HAMP or determined ineligible for the program; I did not fail a HAMP trial period plan; I have responded to all reasonable requests for information; and I have not refused help under the program.

   ■ Other reason: I have been in contact with Wells Fargo on my situation — Currently in process, but date + money has been held by NYS Supreme Court restraining order.

Compliance with HAMP is a condition precedent to foreclosure and failure to comply with HAMP gives rise to equitable defenses to this action.

☐ My loan is insured by the Federal Housing Administration ("FHA"). The loan servicer has not complied with regulations of the Department of Housing and Urban Development requiring pre-foreclosure and loss mitigation evaluation for FHA-insured mortgage loans. Compliance with these regulations is a condition precedent to foreclosure. Further, failure to comply with these rules gives rise to equitable defenses to this action.

☐ Partial or Full Payment:

   ☐ I have made payments in the amount of $_____ which have not been properly credited and are not reflected in the Complaint.

   ☒ Other explanation: Been paying mortgage as NY Attorney General been releasing funds.

☐ On information and belief, Plaintiff did not file a Request for Judicial Intervention (RJI) as required by Uniform Rule 202.12-a(b) and did not file the Affirmation required by AO/431/11.

■ On information and belief, Plaintiff's Attorney did not file a Certificate of Merit as required by CPLR 3012-b attesting that he or she reviewed the facts of the case and based on a consultation with representatives of the plaintiff identified in the certificate and the attorney's review of pertinent documents, including the mortgage, security agreement and note or bond underlying the mortgage executed by defendant and all instruments of assignment, if any, and or any other instrument of indebtedness including modification, extension or consolidation, to the best of his or her knowledge, information or belief there is a reasonable basis for commencement of this action and that plaintiff is the creditor to enforce rights under such document.

☐ As required by CPLR 3012-b, copies of the mortgage, security agreement and note or bond underlying the mortgage executed by defendant and all instruments of assignment, if any, and any other instrument of indebtedness including modification, extension, and consolidation were not attached to the complaint nor the Certificate of Merit.

☐ Other: CERTIFICATE OF MERIT IS DEFICIENT GIVEN BOTH THE NYSAG SENT NO
ON 11/2014, & 3/2015 THAT A ATTACHMENT ORDER HAS BEEN PLACED

**OTHER FACTS CONCERNING YOUR MORTGAGE, YOUR HOME, OR OTHER DEFENSES OR**
**COUNTERCLAIMS** (*ATTACH ADDITIONAL PAGES IF NEEDED*) GIVEN THE BRONX COUNTY
STATE ATTACHMENT ORDER AND RESTRAINING ORDER SIGNED BY HON. NORMA
RUIZ, ATTACHED, SUCH ACTION SHOULD BE DISMISSED AS DEFICIENT AMONG
OTHER ABOVE DEFICIENT FILING ABNORMALITIES. THIS ACTION IS
HARASSMENT GIVEN MY CONSTANT COMMUNICATION IN THIS MATTER, AND
MY PAYMENTS ARE SUBJECT TO ACTIONS BY THE STATES FULL ATTACHMENT
ORDER ON MY ASSETS. I FILLED OUT HAMP DOCS PER PLAINTIFFS REQUEST
YET REPAYMENT IS SUBJECT TO NYS ATTACHMENT ORDER. THIS IS OUR
PRIMARY RESIDENCE AND WE WERE NEVER DEFICIENT PRIOR TO THE STATE
ATTACHMENT AND RESTRAINING ORDER, AND WE ARE ORDERED TO STAY PUT
WITH OUR FAMILY AT THIS TIME. I REQUEST THIS COURT HONOR THE BRONX
COUNTY SUPREME COURTS ORDER AND DISMISS THIS CASE TO PREVENT
ANY VIOLATION OF THE ORDER RESULTING IN THE CONTEMPT OF COURT.
THANK YOU.

Wherefore, Defendant requests that the Complaint be dismissed; that the relief requested by

Defendant be granted in its entirety; that Defendant be granted costs and attorneys' fees if he or

she retains counsel; and any other relief allowed by law and considered just by this Court.

DATE: DECEMBER 8TH, 2015

DEFENDANT'S NAME: JASON P BRAND, ET AL

DEFENDANT'S ADDRESS: 23 BARRINGTON PLACE

MELVILLE, NY 11747

DEFENDANT'S PHONE NO. 516-680-6262

*Appearing Pro Se*

## VERIFICATION

I, _Jason P Brand_____, being duly sworn, state that the within Answer is true to the best of my knowledge, except as to those matters alleged upon information and belief, which I believe to be true.

_Jason P Brand_____

Defendant (Print Name)

_____

Defendant (Signature)

Sworn to and subscribed before me this
_____ day of _____, 20_____

_____
Notary Public

_Disabled & done bond_

Exhibit
~~SCHEDULE~~ "A"

20-03660522

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDING
AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE
TOWN OF HUNTINGTON, COUNTY OF SUFFOLK AND STATE OF NEW YORK, KNOWN
AND DESIGNATED AS LOT NO. 162 ON "MAP OF HUNTINGTON HILLS, SECTION
5", AND FILED IN THE OFFICE OF THE CLERK OF THE COUNTY OF SUFFOLK
ON AUGUST 24, 1956 AS MAP NO. 4706, WHICH SAID LOT IS MORE
PARTICULARLY BOUNDED AND DESCRIBED ACCORDING TO SAID MAP, AS
FOLLOWS:

BEGINNING AT A POINT ON THE EASTERLY SIDE OF BARRINGTON PLACE,
DISTANT 265.91 FEET NORTHERLY FROM THE NORTHERLY END OF A CURVE
HAVING A RADIUS OF 25.00 FEET AND A LENGTH OF 36.14 FEET WHICH
CURVE CONNECTS THE EASTERLY SIDE OF BARRINGTON PLACE WITH THE
NORTHEASTERLY SIDE OF FARMINGTON LANE;

RUNNING THENCE NORTH 00 DEGREES 28 MINUTES 20 SECONDS WEST ALONG
THE EASTERLY SIDE OF BARRINGTON PLACE, 135.00 FEET;

RUNNING THENCE NORTH 89 DEGREES 31 MINUTES 40 SECONDS EAST 325.00
FEET;

RUNNING THENCE SOUTH 00 DEGREES 28 MINUTES 20 SECONDS EAST 135.00
FEET;

RUNNING THENCE SOUTH 89 DEGREES 31 MINUTES 40 SECONDS WEST, 325.00
FEET TO THE EASTERLY SIDE OF BARRINGTON PLACE, SAID POINT OR PLACE
OF BEGINNING.

BEING THE SAME PROPERTY CONVEYED TO JASON P. BRAND AND SAMANTHA L.
BRAND, HUSBAND AND WIFE BY DEED FROM JASON GLADOWSKY AND ALLISON
GLADOWSKY, HUSBAND AND WIFE RECORDED 06/27/2008 IN DEED BOOK 12556
PAGE 183, RECORDED IN THE SUFFOLK COUNTY, NEW YORK.

PARCEL ID: 4-271-2-28

Property is improved by a
1 or 2 family dwelling only.

BY SIGNING BELOW, Mortgagor accepts and agrees to the terms and covenants contained in the Security Instrument and in any Rider(s) executed by Mortgagor and recorded with it.

_____
JASON P BRAND

*Samantha L Brand*
_____
SAMANTHA L BRAND

_____

_____

_____

_____

_____

_____

_____

_____

_____


GENERAL PROVISIONS INCORPORATED BY REFERENCE AND NOT TO BE
RECORDED
SEE MASTER MORTGAGE FORM REFERRED TO HEREIN

(hereafter "Mortgagor"), in consideration of a loan in the amount of $ 250,000.00  made available by RBS CITIZENS, N.A., whose address is 1 Citizens Plaza Providence, RI 02903 (hereafter "Lender"), the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell and convey to the said Lender, its successors and assigns forever, the following real Property, situated in the County of SUFFOLK        , in the State of New York ("Property") and more particularly described as follows:

### SEE EXHIBIT A ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF

and all the Estate, Title and Interest of the said Mortgagor either in law or equity, of, in and to the said premises; together with all the privileges and appurtenances to the same belonging, and all the rents, issues and profits thereof; to have and to hold the same to the only proper use of the said Lender, its successors and assigns forever.

1.  Definitions:  In addition to the definitions set forth in the Master Mortgage form referenced in Section 4 hereof, which definitions shall apply to all capitalized terms contained herein which are not otherwise specifically defined, the following term shall have the following meaning:

(a) "Note" means the Promissory Note or Agreement signed by Mortgagor, delivered to Lender and dated  12/11/2012  . The Note states that Mortgagor owes Lender $ 250,000.00      , plus interest.  Mortgagor promises to pay this debt in regular Periodic Payments and to pay the debt in full not later than 12/17/2037  .

2.  **THIS IS A FUTURE ADVANCE MORTGAGE.**  The repayment of which debt is evidenced by a Credit Line Agreement (the "Agreement") made in favor of the Lender by the Mortgagor and dated the same date as this Security Instrument, under which the Mortgagor and the Lender reasonably contemplate that there will be a series of advances, payments and readvances but which limits the aggregate principal indebtedness at any time outstanding to a maximum principal amount, excluding protective advances, of $ 250,000.00      ; including, but not limited to, any future advances, with interest thereon.

3.  Payment of Principal, Interest and Other Charges.  Mortgagor will pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.

4.  Incorporation of Terms and Conditions of Master Mortgage Form Recorded by Lender. Mortgagor covenants and agrees that it shall be bound by the terms, conditions and provisions set forth in that certain Master Mortgage Form recorded in Volume M00021698        , Page 762              , Instrument #        , of the SUFFOLK        County, New York Records ("Master Mortgage"). Upon the occurrence of a default under such Master Mortgage, Lender shall be entitled to pursue all remedies specified in such Master Mortgage against the Mortgagor and the Property.

5.  Defeasance.  This Security Instrument is given to secure the advances made by Lender to Mortgagor under the Note, which Note has a maturity date of 12/17/2037 . Upon the repayment in full of the amounts advanced under the Note, all accrued interest under the Note and all Incidental Amounts as set forth in the Master Mortgage, this Security Instrument shall be void.

6.  **REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST**  Mortgagor and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over the Security Instrument to give Notice to Lender's address set forth on page one of the Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

 **Citizens Bank**

After recording, return to:



Record and Return To:
ISGN Recording Dept.
600 N John Rodes Blvd
Melbourne, FL 32934

BRAND, JASON

——————————— (Space Above This Line For Recording Data) ———————————
Master Mortgage Form Recorded By RBS Citizens, N.A.   In Volume
_____, Page 762
Instrument # _____, SUFFOLK _____ County, New
York Records

### CREDIT LINE MORTGAGE
### INCORPORATING THE MASTER MORTGAGE FORM
### RECORDED BY RBS CITIZENS, N.A.

MAXIMUM PRINCIPAL AMOUNT $ 250,000.00

KNOW ALL MEN BY THESE PRESENTS:

That as of  12/11/2012

JASON P BRAND

SAMANTHA L BRAND

whose address is  23 BARRINGTON PLACE, MELVILLE, NY 11747

NYMMSTOPEN - Rev 4/11 F

14930932

12/08/2012

GAC







### SUFFOLK COUNTY CLERK
### RECORDS OFFICE
### RECORDING PAGE

Type of Instrument: MORTGAGE
Number of Pages: 7
Receipt Number : 13-0038359
**MORTGAGE NUMBER: DE000493**

Recorded: 04/02/2013
At: 03:46:05 PM

LIBER: M00022322
PAGE: 448

| District: | Section: | Block: | Lot: |
|-----------|----------|--------|------|
| 0400 | 271.00 | 02.00 | 028.000 |

EXAMINED AND CHARGED AS FOLLOWS

Mortgage Amount: $250,000.00

Received the Following Fees For Above Instrument

|  |  | Exempt |  |  | Exempt |
|--|--|--------|--|--|--------|
| Page/Filing | $35.00 | NO | Handling | $20.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Affidavit | $0.00 | NO | Notation | $0.00 | NO |
| Cert.Copies | $0.00 | NO | RPT | $60.00 | NO |
| Mort.Basic | $1,250.00 | NO | Mort.Addl | $720.00 | NO |
| Mort.SplAddl | $0.00 | NO | Mort.SplAsst | $625.00 | NO |
|  |  |  | Fees Paid | $2,730.00 |  |

MORTGAGE NUMBER: DE000493

THIS PAGE IS A PART OF THE INSTRUMENT
THIS IS NOT A BILL

JUDITH A. PASCALE
County Clerk, Suffolk County



12436M150

1319

RECORDED

JUN 73   2 49 PM '87
JULIETTE A. KINSELLA
CLERK OF
SUFFOLK COUNTY

LAWYERS TITLE INSURANCE CORP.
REPRESENTED BY
PHILIP O'HARA NASSAU ASSOC. INC.
824 OLD COUNTRY ROAD
GARDEN CITY, N.Y. 11530

REDACTED

# Schedule A

Title Number: 15-009539

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, with the buildings and improvements thereon erected, situate, lying and being in the Town of Huntington, County of Suffolk and State of New York, known and designated as Lot Number 162 on "Map of Huntington Hills, Section 5", and filed in the Office of the Clerk of the County of Suffolk on August 24, 1956 as Map No. 4706, which said lot is more particularly bounded and described according to said Map as follows:

BEGINNING at a point on the Easterly side of Barrington Place, distant 265.91 feet northerly from the northerly end of a curve having a radius of 25.00 feet and a length of 36.14 feet, which curve connects the Easterly side of Barrington Place with the Northeasterly side of Farmington Lane;

RUNNING THENCE North 00 degrees 28 minutes 20 seconds West, along the Easterly side of Barrington Place, 135.00 feet;

RUNNING THENCE North 89 degrees 31 minutes 40 seconds East, 325.00 feet;

RUNNING THENCE South 00 degrees 28 minutes 20 seconds East, 135.00 feet;

RUNNING THENCE South 89 degrees 31 minutes 40 seconds West, 325.00 feet to the Easterly side of Barrington Place, said point or place of BEGINNING.

District:    0400    Section:    271.00    Block:    02.00    Lot:    028.000

SCHEDULE B

JASON P. BRAND is named herein as a party Defendant because he is a certified owner of the subject premises, is an obligor on the note and mortgaged his interest.

SAMANTHA L. BRAND is named herein as a party Defendant because she is a certified owner of the subject premises, is an obligor on the note and mortgaged her interest.

CLERK OF THE SUFFOLK COUNTY DISTRICT COURT is named herein as a party Defendant because it has or claims to have judgment(s)/lien(s) against the subject premises, which are subordinate to the Plaintiff's mortgage. Copies of said judgment(s)/lien(s) are annexed hereto.

CITIMORTGAGE, INC. is named herein as a party Defendant because it has or claims to have judgment(s)/lien(s) against the subject premises, which are subordinate to the Plaintiff's mortgage. Copies of said judgment(s)/lien(s) are annexed hereto.

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL OF THE STATE OF NEW YORK is named herein as a party Defendant because it has or claims to have judgment(s)/lien(s) against the subject premises, which are subordinate to the Plaintiff's mortgage. Copies of said judgment(s)/lien(s) are annexed hereto.

RBS CITIZENS, N.A. N/K/A CITIZENS BANK, N.A. is named herein as a party Defendant because it has or claims to have a lien against the subject premises, which is subordinate to the Plaintiff's mortgage. A copy of said lien is annexed hereto.

STATE OF NEW YORK is named herein as a party Defendant because it has or claims to have judgment(s)/lien(s) against the subject premises, which are subordinate to the Plaintiff's mortgage. Copies of said judgment(s)/lien(s) are annexed hereto.

WHEREFORE, Plaintiff demands judgment for the following:

A) On the first cause of action, that the Defendants and all persons claiming under them subsequent to the filing of the Notice of Pendency of this action in the County of Suffolk may be forever barred and foreclosed from all right, title, claim, lien and equity of redemption in said mortgaged premises, and each and every part thereof; except the right of the United States of America and its political subdivision, if it or they be a party to this action, to redeem as provided for in the applicable laws; that the said premises may be decreed to be sold according to law; that the amount of principal due the Plaintiff on said note and mortgage may be adjudged in the sum of $523,023.12 plus interest from April 1, 2015, and that from the money arising from the sale, Plaintiff be paid the amount of $523,023.12 principal due it on said note and mortgage with interest and late charges that may be due and owing to the time of such payment plus the expenses of sale and the costs and expenses of this action, together with any sum which may be paid by the Plaintiff for repairs to, boarding, securing, protecting and maintaining the premises, taxes, charges, assessments and insurance premiums upon said mortgaged premises, with appropriate interest thereon so far as such moneys properly applicable thereto will pay the same; that the Defendants JASON P. BRAND and SAMANTHA L. BRAND be adjudged to pay any deficiency which may remain; that a Receiver, upon Plaintiff's application therefore, be forthwith appointed for said mortgaged premises for the benefit of the Plaintiff, with all powers of receivers in such actions, and that the Plaintiff have such other and further relief as may be just and proper in the premises, together with attorney's fees, costs and disbursements of this action;

B) On the second cause of action, that CITIMORTGAGE, INC. and every person claiming under it be barred from all claims to an estate or interest in the Premises;

C) That it be adjudged and finally determined that the Plaintiff WELLS FARGO BANK, N.A. is vested with a first mortgage lien position in the Premises; and

D) That the Plaintiff may have such other and further relief in the Premises as may be deemed just and equitable.

Dated: November 16, 2015

Amanda Gentile, Esq.
**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Plaintiff
Main Office 51 E. Bethpage Road
Plainview, NY 11803
516-741-2585

FILED: SUFFOLK COUNTY CLERK 11/19/2015 02:10 PM

NYSCEF DOC. NO. 1

INDEX NO. 612239/2015

RECEIVED NYSCEF: 11/19/2015

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
------------------------------------------------------------------X

WELLS FARGO BANK, N.A.,

            Plaintiff,

    -against-

JASON P. BRAND; SAMANTHA L. BRAND; CLERK
OF THE SUFFOLK COUNTY DISTRICT COURT;
CITIMORTGAGE, INC.; ERIC T. SCHNEIDERMAN,
ATTORNEY GENERAL OF THE STATE OF NEW
YORK; RBS CITIZENS, N.A. N/K/A CITIZENS
BANK, N.A.; STATE OF NEW YORK; "JOHN DOES"
and "JANE DOES," said names being fictitious, parties
intended being possible tenants or occupants of
premises, and corporations, other entities or persons who
claim, or may claim, a lien against the premises,

            Defendants.

------------------------------------------------------------------X

Index No.:

D/O/F:  **SUMMONS**

Premises Address:
23 BARRINGTON PLACE
MELVILLE, NY 11747

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the Complaint in this action, and to serve a copy of your
Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on the
Plaintiff's Attorneys within twenty (20) days after the service of this Summons, exclusive of the day of
service, where service is made by delivery upon you personally within the State, or within thirty (30) days
after completion of service where service is made in any other manner, and in case of your failure to
appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

### NOTICE YOU ARE IN DANGER OF LOSING YOUR HOME

**If you do not respond to this Summons and Complaint by serving a copy of the answer on the
attorney for the mortgage company who filed this foreclosure proceeding against you and filing the
answer with the Court, a default judgment may be entered and you can lose your home.
Speak to an attorney or go to the Court where your case is pending for further information on how
to answer the Summons and protect your property.
Sending a payment to your mortgage company will not stop this foreclosure action.
YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE ATTORNEY FOR
THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE ANSWER WITH THE
COURT.**

### PLEASE BE AWARE:

(1) that debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et
seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including, but
not limited to:

    (i) the use or threat of violence;
    (ii) the use of obscene or profane language; and
    (iii) repeated phone calls made with the intent to annoy, abuse, or harass.

(2) If a creditor or debt collector receives a money judgment against you in Court, state and federal laws
may prevent the following types of income from being taken to pay the debt:

24.     That upon information and belief, the estate and/or interest which may be claimed in said Premises, by the Defendant CITIMORTGAGE, INC. has been satisfied, and therefore, is not a valid lien against the subject Premises hereinbefore set forth, in that the mortgage made to MANUFACTURERS HANOVER TRUST COMPANY and assigned to FIREMAN'S FUND MORTGAGE CORPORATION, was, upon information and belief, paid or foreclosed at the time the mortgage of the Plaintiff was issued.

25.     That, upon information and belief, any estate or interest in the Premises, which the Defendant CITIMORTGAGE, INC. ever had, claim or may claim in said Premises, or any part thereof, and any and all liens or encumbrances thereof which ever existed, were claimed or may be claimed in favor of said Defendant CITIMORTGAGE, INC., including the estates and interests claimed or which may be claimed by it by virtue of its mortgage and the facts hereinbefore set forth, are ineffective and invalid as against the title and interest of the Plaintiff in and to said Premises and that the Plaintiff now holds a first mortgage lien in said Premises free and clear of all estates, interests, liens and encumbrances of every kind and nature, existing in favor of or claimed by the Defendant CITIMORTGAGE, INC.

26.     Upon information and belief, that the Defendant CITIMORTGAGE, INC. is known to be a corporation and is not an infant, mentally retarded, mentally ill or an alcohol abuser.

27.     Any judgment granted herein will not affect any person or persons not in being or ascertained at the commencement of this action, who by any contingency contained in a devise or grant or otherwise, could afterward become entitled to a beneficial estate or interest in the aforesaid Premises, and every person in being who would have been entitled to such estate or interest, if such event had happened immediately before the commencement of the action is named as a party hereto.

-THIS SPACE WAS INTENTIONALLY LEFT BLANK-

liens, and amendments, if any, of record; any state of facts an accurate survey may show; restrictions, regulations, ordinances and zoning ordinances of any municipal or governmental authority having jurisdiction thereof; and municipal, departmental and other governmental violations, if any, affecting the premises; and real estate taxes, sewer rents, water charges, if any, open of record.

14.     That no other action has been commenced at law or otherwise for the recovery of the sum or any part thereof secured by the said instrument[s].

15.     That the Defendants all have or claim to have some interest in or lien[s] upon the said mortgaged premises, or some part thereof, which interest or lien[s], if any, has [have] accrued subsequently to the lien[s] of the said mortgage[s] or was in express terms or by law made subject thereto, or has [have] been duly subordinated thereunto.

16.     That the Defendants "JOHN DOES" and "JANE DOES" may be tenants or may be in possession of the aforementioned premises, or may be corporations, other entities or persons who claim, or may claim, a lien against the premises.

17.     That the basis for naming any political subdivision, governmental agency or similar body, or the holder of a security interest in either personal property or real property, if any, is set forth as Schedule "B."

## SECOND CAUSE OF ACTION

18.     Plaintiff repeats and reiterates each and every allegation of the Complaint in paragraphs "1" through "17" with the same force and effect as if set forth herein.

19.     That, upon information and belief, the Plaintiff WELLS FARGO BANK, N.A. holds a first mortgage lien and remains the first mortgagee of the following premises 23 BARRINGTON PLACE, MELVILLE, NY 11747, bearing tax map designation: District: 0400, Section: 271.00, Block: 02.00, Lot: 028.000, and more fully described in Schedule "A" (hereinafter the "Premises.")

20.     That this action is brought pursuant to Article 15 of the Real Property Actions and Proceedings Law of the State of New York, to compel the determination of claims to the real property hereinafter described.

21.     That the Plaintiff WELLS FARGO BANK, N.A. acquired its interest in the Premises by virtue of a certain mortgage made by JASON P. BRAND and SAMANTHA L. BRAND to WELLS FARGO BANK, N.A., in the amount of $625,000.00, dated September 28, 2012 and recorded in Liber M00022274 at Page 100 in the County of Suffolk on November 27, 2012.

22.     That, upon information and belief, the Defendant CITIMORTGAGE, INC., as it appears from the public records, may claim, an estate or interest in the above described Premises superior and adverse to that of the Plaintiff in that the Defendant CITIMORTGAGE, INC. holds a mortgage made by KAREN SACHS and STEVEN SACHS to MANUFACTURERS HANOVER TRUST COMPANY, in the amount of $250,000.00, dated December 10, 1986 and recorded January 23, 1987 in Liber 12436 at Page 139 in the County of Suffolk. Said mortgage was recorded prior to the Plaintiff's mortgage.

23.     Thereafter, the mortgage was assigned to FIREMAN'S FUND MORTGAGE CORPORATION by assignment of mortgage dated December 10, 1986 and recorded in Liber 12436 at Page 149 in the County of Suffolk on January 23, 1987. CITIMORTGAGE, INC. is successor by merger to FIREMAN'S FUND MORTGAGE CORPORATION.

which premises is more fully described in Schedule "A," annexed hereto and made a part hereof.

5.     Plaintiff

(a)     is the holder of the subject note and mortgage, or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage and note; and

(b)     has complied with all the provisions of section five hundred ninety-five-a of the Banking Law and any rules and regulations promulgated there under, section six-L or six-M of the Banking Law; and

(c)     is in compliance with sending the ninety (90) day notices as required by RPAPL §1304; see 90 day notice attached hereto as an Exhibit; and

(d)     is in compliance with RPAPL §1306, if applicable. The tracking number provided by the New York State Department of Financial Services for the reporting is NYS3779406.

6.     Said premises are subject to covenants, restrictions, easements of record, prior mortgages and liens, and amendments thereto, if any; to any state of facts an accurate survey may show; railroad consents and sewer agreements, and to utility agreements, municipal and governmental zoning, rules, regulations and ordinances, if any.

7.     That the Mortgagors, their successors, assigns and/or transferees, have failed to comply with the terms and conditions of said above named instrument[s] by failing or omitting to pay the installment which became due and payable as of March 1, 2015 and also by failing or omitting to cure the default, to the date hereof, although duly demanded.

8.     The total monthly payment due as of default date to Plaintiff is $7,001.86.

9.     That the terms of the above described instruments provide: (1) that the whole of said principal sum and interest shall become due at the option of the Mortgagee after default in the payment of any installment of principal or of interest; (2) that upon any default the Mortgagor will pay to the Mortgagee any sums paid for taxes, charges, assessments, and insurance premiums upon said mortgaged premises; (3) that in case of sale under foreclosure, the premises may be sold in one parcel.

10.     Pursuant to the terms of said instrument[s] notice of default has been duly given to the Defendants JASON P. BRAND and SAMANTHA L. BRAND if required, and the period to cure, if any, has elapsed and by reason thereof, Plaintiff has elected and hereby elects to declare immediately due and payable the entire unpaid balance of principal.

11.     That the balance of principal due upon said note and mortgage as of the date of default is $528,949.35 less applied payments good through May 1, 2015. That the current unpaid principal balance due upon the note and mortgage is $523,023.12 plus interest from April 1, 2015.

12.     That in order to protect its security, Plaintiff may be compelled during the pendency of this action to make repairs to, board, secure, protect and maintain the premises, to pay taxes, assessments, water rates, sewer rentals, insurance premiums, mortgage insurance premiums, if there be any, and other charges affecting the premises, and the Plaintiff requests that any sum so paid be added to the sum otherwise due, with interest as provided in the aforesaid instruments, and be deemed secured by said instrument[s] and adjudged a valid lien on the premises hereinabove described.

13.     That the Plaintiff requests that in the event this action proceeds to Judgment of Foreclosure and Sale, said premises be sold subject to covenants, restrictions and easements, prior mortgages and

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

--------------------------------------------------------------------x

WELLS FARGO BANK, N.A.,

                                    **Plaintiff,**

            -against-

JASON P. BRAND; SAMANTHA L. BRAND; CLERK
OF THE SUFFOLK COUNTY DISTRICT COURT;
CITIMORTGAGE, INC.; ERIC T. SCHNEIDERMAN,
ATTORNEY GENERAL OF THE STATE OF NEW
YORK; RBS CITIZENS, N.A. N/K/A CITIZENS
BANK, N.A.; STATE OF NEW YORK; "JOHN DOES"
and "JANE DOES," said names being fictitious, parties
intended being possible tenants or occupants of
premises, and corporations, other entities or persons who
claim, or may claim, a lien against the premises,

                                 **Defendants.**

--------------------------------------------------------------------x

Index No.:

D/O/F:

         **COMPLAINT**

Premises Address:
23 BARRINGTON PLACE
MELVILLE, NY 11747

Plaintiff, by its attorney, ROSICKI, ROSICKI & ASSOCIATES, P.C., complaining of the Defendant(s)
alleges, upon information and belief as follows:

### FIRST CAUSE OF ACTION

    1.     At all times hereinafter mentioned, Plaintiff WELLS FARGO BANK, N.A. was and still is
duly organized and existing under the laws of the United States of America.

    2.     At all times hereinafter mentioned, the Defendants were, and still are, residents,
corporations and/or bodies politics, duly authorized to reside and/or exist in and under the laws of New
York State.

    3.     On or about September 28, 2012, JASON P. BRAND and SAMANTHA L. BRAND
executed and delivered to WELLS FARGO BANK, N.A., a note bearing date that day, whereby JASON
P. BRAND and SAMANTHA L. BRAND covenanted and agreed to pay the sum of $625,000.00, with
interest on the unpaid balance thereof, at the rate of 3.25000 percent per annum, to be computed from the
date of said note, by payments of $4,391.68 on December 1, 2012 and thereafter in payments of $4,391.68
on the like date of each subsequent month, until said note is fully paid, except that the final payment of
principal and interest remaining due, if not sooner paid, shall become due and payable on November 1,
2027. See note attached hereto as an Exhibit.

    4.     As collateral security for the payment of said indebtedness, the aforesaid Defendants
JASON P. BRAND and SAMANTHA L. BRAND also executed, acknowledged and delivered to WELLS
FARGO BANK, N.A., a mortgage dated September 28, 2012 and recorded in the County of Suffolk on
November 27, 2012 in Liber M00022274 at Page 100. The mortgage tax was duly paid. See mortgage
attached hereto as an Exhibit.

Said mortgaged premises being known as and by street address:
23 BARRINGTON PLACE, MELVILLE, NY 11747, bearing tax map designation:

District: 0400   Section: 271.00   Block: 02.00   Lot: 028.000

1. Supplemental security income, (SSI);
2. Social security;
3. Public assistance (welfare);
4. Spousal support, maintenance (alimony) or child support;
5. Unemployment benefits;
6. Disability benefits;
7. Workers' compensation benefits;
8. Public or private pensions;
9. Veterans' benefits;
10. Federal student loans, federal student grants, and federal work study funds; and
11. Ninety percent of your wages or salary earned in the last sixty days.

TO THE DEFENDANTS, except JASON P. BRAND and SAMANTHA L. BRAND: The Plaintiff makes no personal claim against you in this action.

TO THE DEFENDANTS, JASON P. BRAND and SAMANTHA L. BRAND: If you have obtained an Order of Discharge from the Bankruptcy Court, which includes this debt, and you have not reaffirmed your liability for this debt, this lawsuit is not alleging that you have any personal liability for this debt and does not seek a money judgment against you. Even if a discharge has been obtained, this lawsuit to foreclose the mortgage will continue and we will seek a judgment authorizing the sale of the mortgaged premises.

Dated: November 16, 2015

Amanda Gentile, Esq.
**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Plaintiff
Main Office 51 E. Bethpage Road
Plainview, NY 11803
516-741-2585

# Help for Homeowners in Foreclosure

New York State Law requires that we send you this notice about the foreclosure process. Please read it carefully.

## Summons and Complaint

You are in danger of losing your home. If you fail to respond to the summons and complaint in this foreclosure action, you may lose your home. Please read the summons and complaint carefully. You should immediately contact an attorney or your local legal aid office to obtain advice on how to protect yourself.

## Sources of Information

The State encourages you to become informed about your options in foreclosure. In addition to seeking assistance from an attorney or legal aid office, there are government agencies and non-profit organizations that you may contact for information about possible options, including trying to work with your lender during this process. To locate an entity near you, you may call the toll-free helpline maintained by the New York State Department of Financial Services at (800) 342-3736 or visit the Department's website at www.dfs.ny.gov.

## Foreclosure rescue scams

Be careful of people who approach you with offers to "save" your home. There are individuals who watch for notices of foreclosure actions in order to unfairly profit from a homeowner's distress. You should be extremely careful about any such promises and any suggestions that you pay them a fee or sign over your deed. State law requires anyone offering such services for profit to enter into a contract which fully describes the services they will perform and fees they will charge, and which prohibits them from taking any money from you until they have completed all such promised services.

EXHIBIT D